## DIKEMAN *vs.* DIKEMAN and others.

The object of the act of May, 1841, to authorize the sale of real estate, in certain cases, to pay assessments and for other purposes, was not to throw upon the court of chancery the burthen of deciding all questions as to the validity of assessments and sales of property in cities and villages, where the property assessed is held by several persons as tenants in common, or by persons having different estates or interests therein ; but to enable a person who is not the absolute owner in fee of the whole premises assessed, to compel other persons, having estates or interests therein, to contribute their rateable proportions of the assessments which have been legally and properly made, upon the premises. And to entitle a complainant to file a bill for contribution, under that act, he must show that a valid assessment has been made upon the premises, upon which the defendants are interested with him ; and that under such assessment the premises have been sold, or are liable to be sold.

Where the premises have been sold, for the non-payment of an assessment, the complainant, to entitle himself to an order of the court extending the time for redemption, must not only show that a valid assessment has been made, and that the premises have been properly sold, but he must also verify his bill by oath. His bill also must contain a distinct offer, that in case he discontinues the suit, or his bill is dismissed, he will redeem the premises and pay the interest upon the redemption money from the expiration of the original period of redemption ; or if the premises are not redeemed, that he will pay the interest on the redemption money for the term of such extension.

And where the complainant, who applies for an extension of the time for redemption, is irresponsible, the court ought not to grant an order of extension, without requiring security from him, that he will comply with the terms of the offer contained in his bill.

Where lands have been sold for taxes, or assessments, during the existence of a law which entitled the purchaser to an absolute deed, or to a lease for a limited term, in case the premises were not redeemed within a specified time, it is not competent for the legislature to extend the time for the redemption, and thus to deprive the purchaser of the right to the possession and enjoyment of the premises, without providing an adequate compensation, to the purchaser, for his loss of the use of the premises during the time of such extension.

The provisions of the act of the 26th of May, 1841, authorizing an extension of the time for the redemption of certain lands, in cities and villages, which have been sold for taxes or assessments, are unconstitutional and void, so far as they relate to sales which had been made previous to the passage of that act.

THIS was an appeal, by G. Storms, from an order of the vice chancellor of the first circuit, extending the time to redeem certain lands in the city of New-York, sold for assessments and bid

Dikeman *v.* Dikeman.

off by the appellant, until six months after the final decree in this cause should be made. The bill was filed in February, 1843, by S. Dikeman, the widow of Matthew Dikeman the younger. It stated, among other things, that in 1815 John Horn died, seised of lands in the city of New-York, of which the lands mentioned in the bill as having been sold for assessments were a part; that by his will he devised one-eighth of his real estate to his daughter Jemima, and her husband Matthew Dikeman, and to the survivor of them, for life, with remainder to the lawful issue of his said daughter, and their heirs forever; that he devised the other seven-eighths of his estate to his seven other children, in fee; that a partition of the estate was afterwards made, by the mayor's court of New-York, upon the petition of one of the devisees in fee, and that in such suit one-eighth of such estate, which included the lots sold for assessments, was set off in severalty to M. Dikeman and his wife, and to the survivor of them, for life, and for her issue after her death, under the devise in the will of her father. The bill also stated that Matthew Dikeman died in 1834, leaving his wife and three children, Jemima, the wife of G. Van Doren, Amelia Ann, the wife of F. W. Jenkins, and Matthew Dikeman, the husband of the complainant, surviving him; that M. Dikeman the younger died in 1836, leaving the complainant and four infant children surviving him; that, by his will, he authorized his executor and his executrix to sell and dispose of all or any of his real estate, and to invest the proceeds upon bond and mortgage, for the benefit of his estate, and to apply the income to the education and support of his wife and children; and gave one-third of the residue of his estate to his widow, for her own benefit, and directed the residue of the income to be applied to the use of the children, until they should attain the age of twenty-one, in such manner as his executor and executrix should direct; and further directed that when the youngest child should attain the age of twenty-one, two-thirds of the estate should be equally divided between his children, and the issue of such of them as had died leaving issue, *per stirpes ;* and that after the death of his wife the other third of the estate should be divided in the same manner.

Dikeman *v.* Dikeman.

The complainant also alleged, in her bill, that Mrs. Jenkins died in 1842, having, previous to her death, conveyed all her interest in the estate of John Horn, to C. Curtis and others, in trust, to reconvey the same to her in case she should survive her husband, and if she should not, then in trust to convey one moiety thereof to her mother, and the other moiety to her surviving husband; and that Jemima, the daughter of John Horn, Mr. and Mrs. Van Doren, and the four children of Matthew Dikeman the younger, were still living at the time of filing such bill. The complainant further stated and alleged, that certain real estate, particularly described in the bill, was a part of the lands set off and assigned in severalty, in the partition suit, to Matthew Dikeman the elder and his wife, and the survivor of them for life, and for the issue of the wife after their deaths; that in 1838, an ordinance was passed by the common council of New-York, and approved by the mayor, directing the opening of the fifth avenue from Twenty-first to Forty-second-street, but whether upon a petition from the owners of land through which said avenue passed, or of the owners of land affected by such opening, or without the presentation of such petition, she was ignorant and could not state; that commissioners of estimate and assessment were appointed, who made their report of the assessment of damage and benefit to the owners of land affected by opening the avenue, which report was confirmed by the supreme court in July, 1838; but whether the proceedings of the commissioners were in all respects, or in any respect, legal and regular, she was not informed or advised; that among the assessments thus made was one of $4651, upon the premises, or intended to be upon the premises, particularly described in the bill; but what particular description of the premises assessed was contained in the report of the commissioners, or whether the premises were sufficiently designated and described to render the assessment valid, she was not advised.

The complainant further stated, in her bill, that sometime in 1837, an ordinance was passed by the common council and approved by the mayor, directing a sewer to be constructed in Twenty-first-street; but whether the common council had juris-

diction to pass the ordinance or to cause the sewer to be constructed, she was not advised; that the report of the commissioners of estimate and assessment was confirmed by the supreme court in November, 1837; but whether the proceedings of the commissioners were in all respects, or in any respect, regular and legal, she was not informed or advised; that among the assessments thus made, for the opening of the sewer, $59,01, was assessed upon ten lots, being part of the property described in the bill as assessed for opening the avenue; but whether the premises assessed, or intended to be assessed, were well or sufficiently described or designated, so as to be a valid lien on the said lots, she was not informed or advised. The bill then proceeded to state that the said assessments were made to Jemima Dikeman; that the premises described in the bill were sold together, in one parcel, for the payment of the aggregate of the two assessments, with interest and expenses, amounting in all to $5842,63, and were struck off to the defendant Storms, on the 7th of October, 1840, for the term of five thousand years; that a certificate of such sale was executed under the corporate seal of the corporation of the city, according to the statute; and that the premises being actually occupied, and it being necessary, for that reason, that notice should be served, the defendant Storms, on the 26th of October, 1842, served on Jemima Dikeman a notice of the sale, and that the premises had been conveyed to him, stating the amount for which the sale was made, and the subsequent charges, and that unless the consideration money and forty-two per cent interest, and the subsequent charges should be paid to the street commissioner, within six months, the conveyance would become absolute, &c. And the complainant further stated that *if the sale of the premises to Storms was legal and valid*, the same would become absolute, and that she and all other persons interested in the premises would be barred from her and their right of redemption, in six months after the service of such notice on the said Jemima Dikeman; and that she was desirous that the premises should be redeemed, and that the several parties in interest should contribute their proper proportions for that purpose, and that the time for such redemp-

tion should be extended, if necessary, for the period of six months after the making of the final decree in this cause. The complainant, therefore, prayed for such extension of the time of redemption, and that the several parties interested in such redemption might be decreed to pay and contribute, for the redemption of the premises, their rateable proportions of the redemption money, according to their several rights and interests in the premises; and that in default thereof the premises, or so much thereof as might be necessary, might be sold in fee simple, and the proceeds applied to such redemption.

*B. W. Bonney*, for the appellant.

*C. De Witt*, for the respondent.

THE CHANCELLOR. The bill in this case is not properly framed to entitle the complainant to an order extending the time to redeem, under the act of the 26th of May, 1841, to authorize the sale of real estate in certain cases to pay assessments, and for other purposes. (*Laws of* 1841, *p.* 325.) The object of that statute was not to throw upon the court of chancery the burthen of deciding all questions which might arise in relation to the validity of assessments and sales of property in cities and villages, when the property assessed is owned by several persons as tenants in common, or by persons having different estates or interests therein; but it was to enable a party who was not the absolute owner in fee of the whole premises assessed, to compel other persons, having estates or insterests therein, to contribute their rateable proportions of assessments which had been properly and legally made upon the premises. To entitle the complainant to file a bill, under this act, to compel the other parties interested in the premises to contribute, the bill must distinctly allege that an assessment has been imposed upon the premises, which is legal and valid, under which the premises have been sold, or are liable to be sold. For if the bill leaves it doubtful whether the assessment is legal and valid, the other parties interested in the property may demur to the bill; or,

Dikeman *v.* Dikeman.

they may raise the objection in their answer, so as to have the bill dismissed at the hearing, on that ground. And to entitle the complainant to an order to extend the time to redeem, whereby the purchaser may be kept out of the possession of the property for an indefinite period, without any compensation for the use. of the premises in the meantime, the bill should not only show, that a valid assessment has been made, and that a valid sale has taken place, but it should also be verified by oath. The bill, for that purpose, should also contain a distinct offer, that if the suit should be discontinued, or the bill should be dismissed at the hearing, the complainant would either redeem the premises, and pay the interest upon what was due at the time of the expiration of the original period for redemption, or, if the premises were not redeemed, that he would pay interest on the redemption money during the continuance of such extension. And where the complainant is irresponsible, such an order should not be made, without requiring security that the offer contained in the bill shall be complied with.

In no other way is it possible to protect the rights of the purchaser against bills which may be filed by collusion, between persons having distinct interests in the premises, for the mere purpose of depriving the purchaser of the benefit of his purchase for an indefinite period, and without paying interest on the amount equitably due to redeem the premises in the meantime. For after the suit has been protracted for years, the complainant may dismiss the bill, as a matter of course, at any time before decree. And even where there is a distinct allegation, in the bill, that the premises were legally and properly assessed, if that allegation is put in issue, by the other defendants who are interested in the premises, the bill will be dismissed at the hearing, of course, in case the complainant neglects to produce the necessary proof to sustain such allegation. Nor can the purchaser, in such a case, litigate the question as to the validity of the assessment, with the complainant and the co-defendants; so as to deprive them of the power of raising the same questions again, in a court of law, in an ejectment suit to recover the possession of the property.

Dikeman *v.* Dikeman.

It is evident, from the frame of the bill in this case, that the complainant did not intend to charge, even upon her belief, that either of the assessments stated in the bill were properly or legally made, so as. to render them valid and to entitle Storms to the term in the premises, under his purchase, in case she or the other defendants should not redeem. Nor did she intend, or expect, to introduce proof to establish the validity of the assessments and of the sale to Storms, so as to entitle her to a decree for contribution against her co-trustee, and her infant children, and others who would be interested in the redemption of the premises, in case the sale was valid. For throughout the bill she is very careful to exclude the conclusion that she intends to admit that either the assessments or the sale were made in such a manner as to render them legal and valid. This bill must therefore have been filed for the mere purpose of obtaining an indefinite extension of the time to redeem, and without giving to the purchaser any equivalent for the loss of interest upon the redemption money, in the meantime. Or, it may have been filed in good faith, upon the mistaken supposition that it was not necessary to show that the assessments upon the premises were legal, or even prima facie legal; but that the question as to the validity of the assessments, and of the sale, could be litigated in this suit, between the purchaser on the one side, and herself and the other owners of the premises on the other. This last supposition is the most probable, from the fact that she has made the corporation of the city of New-York a party defendant in the suit. An order extending the time to redeem could not legally be granted upon such a bill; even if Storms had become the purchaser of the premises subsequent to the passage of the act before referred to, and subsequent to the act of the 26th of May, 1841. (*Laws of* 1841, *p.* 211.) The order in question should, therefore, be reversed, even if it was competent for the legislature to divest the purchaser of rights which he had previously acquired under the laws of the state, which were in force when he purchased the premises and paid his money therefor. But the constitutional question, as to the power of the legislature, to extend the time for redemption, is also raised upon this ap-

peal.  And as it has been fully discussed, particularly in reference to the provision in the act of the 26th of May, 1841, under which this order was made, I shall proceed to consider it.

By the act of April, 1816, for the more effectual collection of taxes and assessments in the city of New-York, (*Laws of* 1816, *p.* 113,) where lands are sold for taxes or assessments, they are to be sold for a term of years, to the person who will advance the amount due, including the interest and costs, for the shortest term.  And the corporation is to give to the purchaser a certificate, describing the lands sold, and specifying the term of years for which the same have been sold, the sum paid therefor, and the time when the purchaser will be entitled to a lease of the lands thus sold.  The statute then provides that if the owners of the land, or some one in their behalf, do not redeem such land within the two years from the date of the certificate, by paying the sum mentioned therein, with interest at the rate of twenty per cent per annum, the corporation shall, at the expiration of the two years, give to the purchaser a lease, for the term for which the lands were sold; which lease shall be conclusive evidence of the regularity of the sale.  And by virtue of such lease, and of that act, the legislature declared that the purchaser should lawfully hold and enjoy the lands in such lease mentioned, for his own use, against the owners and all claiming under them, until the purchaser's term therein should be fully complete and ended.  These provisions of the act of April, 1816, remained in full force at the time of the appellant's purchase, in October, 1840, except as to the rate of interest and the rights of mortgagees, and as to the payment of certain expenses subsequent to the sale.  (*See Laws of* 1840, *p.* 273, §§ 5, 6; *Id. p.* 336.) When Storms became the purchaser of the premises in question, therefore, if these assessments were valid and the sale regular, his contract with the corporation, under the sanction of a law of the state, entitled him to an absolute lease of the premises at the end of the two years, and to the possession and use of the same, for the full term mentioned in his certificate of sale; in case the owners of the land, or some person for them, should not redeem the same, within the two years, as required by the laws then in

Dikeman v. Dikeman.

force. The question then, which arises under the act of the 25th of May, 1841, is whether it was competent for the legislature to extend the time for redemption, for six months at least, beyond the two years; and thus to deprive the purchaser of the possession and use of the premises for a part of the term which he had purchased therein, without any compensation whatever. It is true the fifth section of the act requires an additional per centage to be paid, in case the owners shall elect to redeem within six months after the service of notice upon the occupant. But such owners are under no obligation to redeem. And there is nothing in the act requiring them to pay the purchaser the rent of the land, or any interest upon the purchase money, during the time he is kept out of possession, where they neglect or refuse to redeem the premises within the six months. It is perfectly evident, therefore, that the effect of such a law upon the rights of a prior purchaser, who had only purchased a term of one year in the land, would be to deprive him of the half of the value of his purchase, in case the land should not be redeemed at the end of six months; even if the notice required by the subsequent law was served upon the occupant on the same day that the lease was executed. And the value of his purchase would be diminished, to a greater or less extent, where his purchase was for a shorter or a longer term, in the premises.

Again; by the act of the 26th of May, 1841, under the provisions of which act this order was made, still greater injustice is done to the purchaser, who had contracted in reference to the former law, which was in force when the sale to him was made. For, in the act of the 26th of May, 1841, no provision whatever is made to compensate the purchaser for his loss of the interest upon the redemption money, if the owners elect to redeem at the end of six months after the final decree in the suit; or for the loss of a portion of his term, in case they shall neglect to redeem at the expiration of the time specified in the order of the court. In this case, it is true, the premises were purchased for a very long term. And the shortening of that term, merely for the five or six years which may be necessary to carry a litigated chancery suit through all the courts, to settle the rights

Dikeman *v.* Dikeman.

of the respective owners, and their proportions of the redemption money properly chargeable upon the contingent interests of some of them, under trusts of doubtful validity, may perhaps be considered of but little consequence. But in deciding upon the constitutionality of a law which is general, and which in its operation may totally destroy the vested rights of other persons, I am not at liberty to declare the law to be constitutional, merely because the injury to one of the parties in the particular case under consideration is comparatively small. For if the law is constitutional in reference to this case, it is also constitutional in reference to the purchase of a term of two or three years only; where the purchaser would probably lose the entire benefit of his purchase, and the whole amount paid for the term, by the expiration of such term before the termination of the chancery suit. But even in the case under consideration, if the complainant and the other owners should elect to redeem the premises at the termination of this suit, the purchaser will lose the interest upon more than $8000, for several years; in case this extension of the time of redemption can be sustained. And if they should not redeem, he would of course lose the use of the land, and the privilege of selling it, during the whole period of the pendency of this suit.

The case would have been entirely different, if the appellant had become the purchaser of the lands in question, and had advanced his money upon such purchase, after the passage of the law requiring personal notice to be served upon the occupant, and giving six months thereafter to redeem; and after the passage of this law, authorizing the court of chancery to extend the time to redeem in certain cases. For then the legal presumption would have been that the purchaser intended to assume the burthen of serving a notice upon the occupant, and knew that the time of redemption would not expire until six months after the service of such notice; and that he also assumed the risk of the extension of the time to redeem, in a case like the present, if this court, in the exercise of a sound discretion, should grant such an extension. But as no such presumption can arise in a case, where by the terms of the act under which the purchase was made, and upon the faith of which the purchaser advanced

Dikeman *v.* Dikeman.

his money, such purchaser was entitled to an irredeemable term in the lands, and to the immediate possession thereof, as soon as he obtained his lease from the corporation, at the end of the two years.

The act of 1819, which first required a notice to be served upon the occupant of lands sold by the comptroller for taxes, and allowing such occupant six months thereafter to redeem, was in terms restricted to sales to be made after the passage of the act. (*See Laws of* 1819, *p.* 254.) A similar restriction was contained in the first section of the act of April, 1830, (1 *R. S. 2d ed.* 401, § 90,) which required the purchaser to serve such notice, upon the occupant, within one year. And the second section of the act of the 25th of May, 1841, as well as the provision in the act of the 26th of the same month, authorizing an extension of the time of redemption by the order of this court, would undoubtedly have been confined to future sales also, if the attention of the lawmakers had been directed to the constitutional objection to those provisions, in reference to purchasers who had advanced their money upon the faith of the laws, of the state, which were in force when their purchases were made. The language of the act of the 26th of May, 1841, however, is such in its terms as to embrace sales which had already been made, as well as those which might be made thereafter. It therefore becomes the duty of this court to declare it inoperative and void, as against the appellant, and in reference to the purchase which he had previously made.

The order appealed from must be reversed. But the questions arising in this case, being new and important, I shall not charge the respondent with costs upon this appeal.

                               Decree accordingly.