## STILLWELL *vs.* DOUGHTY.

*In the matter of the Estate of* SAMUEL STILLWELL, *deceased.*

A devisee for life of the income of real estate leased for a term of years by the testator, is entitled only to the rents falling due in his life-time; and where the devisee died intermediately between two quarter days,—*Held*, that the rent could not be apportioned. The statute on this subject providing for an apportionment of rent, relates only to leases made by the life-tenant, and not to those made by the testator.

J. S. LAWRENCE, *for devisees in fee.*

I. The lease of 15 Bowery, having been executed by Samuel Stillwell, in his life-time, and the rent therein being reserved to him, *his heirs or assigns,* enured to the benefit of William M. Stillwell's devisees, and bound them, and they were entitled to receive the whole amount of the quarter's rent, which became due after the death of Elizabeth Stillwell. The devise to William M. Stillwell is in express terms of the premises as they were held under the lease to Daniel Smyth.

II. Elizabeth Stillwell was by the will entitled only "*to the clear income*" of the real estate of the testator during her life, and as the income or rent of this property for the last quarter did not pursuant to the contract with the testator himself become due until after the death of Elizabeth, her executor is not entitled to any apportionment of the rent, there not being any "*income*" due.

III. This is not a case where the tenant for life has executed a lease and died before rent due, where the statute

(2 *R. S. 3d. Ed. p.* 32, § 22), would apply, for here the testator had himself executed the lease, and the estate of the .lessee continued after the death of Elizabeth. The statute (which is taken from the English statute) applies only to cases where the devise itself *determined* by the death of the tenant for life. (*Archbold's Landlord and Tenant, p.* 168, *title Apportionment of Rent,* § 6 ; *Ex-parte Smyth,* 1 *Swanston,* 339; *Bortenyd vs. Wooley,* 1 *Tyrwhit,* 522). The whole object of the statute was to prevent a loss of rent where the life tenant who had made a demise which determined on his death, died before any rent became due, the law before the statute being, that in such a case the tenant should pay nothing. This statute is in derogation of the common law, and should be construed strictly. (See note on English statute, 1 *Swanston,* 339, *Jenner vs. Morgan,* 1 *Peere Wms.* 392.)

IV. The statute cannot be extended by construction so as to make it apply to a case not strictly within its terms. The demise was not one by the life tenant, it did not terminate at her death, but was valid and effectual afterwards, and the rent reserved by it becoming due after the death of the life-tenant, belonged to the devisees of William M. Stillwell. (*Woodfall's Landlord and Tenant,* 252.)

V. There is nothing in the case to take it out of the ordinary rule of law, that rent cannot be apportioned. The demise continuing in force, the parties succeeding to the estate were entitled to all the rent becoming due under it after the death of the widow, to whom the income was given during her life.

CHARLES EDWARDS, *for representatives of life-tenant.*

I. Under the English statute (11*th George* 2*d. ch.* 19, § 15), the rent would have been apportionable, *see cases in note* (*a*) *Ex-parte Smyth,* 1 *Swanst.* 337 ; and an equitable construction *of* § 15, *of* 1 *R. S.* 747, would give the proportion of rent to

the representatives of Mrs. Stillwell. It has always been said that our act followed the English statute. Kent observes, (3 *Comment.* 471), " But the statute of 11 *Geo.* 2, *c.* 19, § 15, supplied the principle, that apportionment should be made of rent in respect to time in such cases, and that part of the statute has been re-enacted or adopted in this country," and he then refers to the New York R. S., and to the case of *Green, executor of Osborne v. Osborne in error*, 17, *Serg. & Rawle*, 171. The learned commentator in his 4th vol. *p.* 74, adopts the English rule broadly. " If the original estate determines by the death of the tenant for life before the day of payment of rent from the under-tenant, the personal representatives of the tenant for life, are entitled to recover from the under-tenant the whole or a proportional part of the rent in arrear."

Although in examining the question, Mrs. Stillwell may have to be looked on as a stranger tenant for life, yet, it may not be amiss to remember that she is the widow of the testator, and that if it were a question of dower, her right would attach not only to the day of her death, but she would even have the statute right, (1 *R. S.*, 744, § 25) to bequeath any crop in the ground.

III. But, looking at her as mere tenant for life, it is to be remembered that certain legal liabilities which attach to such a beneficiary, continue to the death hour ; namely, the keeping down of interest on assessments, mortgages, &c. Suppose a case of a widow tenant for life of a man who had a large store in Broadway at a high rent; let it be his only estate, and which he had leased for a term. His widow (tenant for life) depends on the rent to meet the bills she contracts for support, and she dies before a quarter day ; can it be in the face of our statute, however limited may seem to be the wording, that a devisee, who never earned or owned the property, can take the whole quarter's rent and so leave the estate of the widow of the owner insolvent, and her creditors, who have in truth supported her through an

expectancy, without any payment. The widow had not the power to pay her way as she went, because her husband had made the rent payable only quarterly or half yearly.

It might be a question, as the lease in this case reserved rent to the testator, his *executors*, administrators, and assigns, and not to him and his heirs, whether the executors may not have rights in such lease (as to rent) after the death of the testator, which a devisee must respect, and in relation to which his estate may be subordinate?

THE SURROGATE.—The testator at the time of his decease, owned the premises, No. 15 Bowery, which were then under lease to Daniel Smyth. He gave to his wife during her life the clear nett income of all his real estate, with certain exceptions. The lease to Smyth reserved the rent to the testator, his executors, administrators, and assigns. The will was a disposition of the land so as to constitute the devisees, assigns of the testator, and to vest in them respectively, all the rights he possessed under the covenants of the lease, so far as the covenants were capable of assignment. The widow, after enjoying the income of this property, died before May quarter day, and the question is whether the rent can be apportioned so as to entitle her representatives to an amount equal to the proportion of the quarter which had expired at the time of her death. The Revised Statutes (1 *R. S. p.* 747, § 16, 22), provide that " when a tenant for life, who shall have demised any lands, shall die on or after the day when any rent became due and payable, his executors or administrators may recover from the under-tenant the whole rent due ; if he die before the day when any rent is to become due, they may recover the proportion of rent which accrued before his death." This section applies only to cases where the demise is by the life-tenant, and it is not applicable therefore, to the present case. It is a re-enactment of the

statute, 11 *Geo.* 2. *c.* 19, § 15, which was passed to remedy the difficulty arising out of the common law doctrine, as to the apportionment of rent. Where the life tenant died before the rent reserved under a lease made by him fell due, the rent was lost both to his executor, and to the reversioner. The executor could not recover because the title to the land had failed, and the remainder-man could not recover because the rent did not accrue during the time when he had title. The rent could not be apportioned, and it was consequently entirely lost. The statute was passed to cure this evil, but it was intended to apply and does apply in terms only to leases determinable on the life of the tenant for life, (*Ex-parte Smyth*, 1 *Swanston*, 338, *note ; Woodfall Landlord & Tenant, p.* 252.) There is no such difficulty to remedy in the present instance. The lease was made by the testator, and any party claiming under him, can recover the rent as it falls due under the lease. The covenant as to rent runs with the land and enures to the benefit of the testator's assigns, who can recover, if they can shew title at the time the rent becomes due and payable. The lessee cannot escape; it is not a question between him, and the representatives of the life-tenant, or the remainder man—but he is bound to pay in any event, the only controversy being whether he is bound to apportion the rent. The case is not, therefore, within the spirit of the statute, nor its letter, and it must be determined by the rule of the common law. I think there are no decisions inconsistent with this ruling. *Green vs. Osborne,* (17 *Serg. & Rawle,* 171), did not relate to rent, but to an annuity ; and decided nothing more than that an annuity in lieu of dower could be apportioned. The statute 4 *Wm. IV., c.* 22, has made the English law conformable to what would seem to be equitable, by declaring that all rents, annuities and other payments shall be apportioned, but that provision has not been made in this State, and however reasonable it might seem to adopt it, that is for the legislature and not for the courts to determine. I am clearly of opinion that the rent cannot be apportioned where the demise has been made by the testator.