EATON vs. THE SUPERVISORS OF MANITOWOC COUNTY.

TAX CERTIFICATES: "MUNICIPAL CORPORATIONS." *(1) Assignment of tax certificates by county. (2–4) Towns not authorized to purchase and hold such certificates.*

1. Tax certificates issued to a county cannot be transferred by it without an assignment in writing.
2. The term "municipal corporations," in the *constitution* of this state, does not include towns *(Norton v. Peck*, 3 Wis., 714); and when used in our *statutes*, it must be taken in its strict constitutional sense, unless a different intention on the part of the legislature is clear.

3. In the proviso to sec. 1, ch. 112, Laws of 1867, the words "counties or *municipal corporations*" include cities and villages, and any other municipal corporations *strictly* so called, but do not include towns, school districts and other *quasi* corporations.
4. Towns are not authorized to purchase and hold tax certificates; and the intervention of a town as the pretended owner of such certificates does not suspend the statutory limitation of actions thereon.

APPEAL from the Circuit Court for *Manitowoc* County.

Action for the amount of certain illegal tax certificates issued by the defendant county, and of which plaintiff is alleged to be the owner. The decision of this court on a former appeal herein will be found in 40 Wis., 668. On the second trial, the following facts were found by stipulation of the parties: 1. Certain described tax certificates set forth in exhibit A, which forms a part of plaintiff's claim in this action, were sold and assigned by the defendant, and passed out of the treasury of said county, to the town of Manitowoc in said county, more than six years before they were filed by plaintiff with the county board for allowance; and plaintiff purchased them from a school district in said town (now city) of Manitowoc, in 1874. Said certificates were issued in the first instance to Manitowoc county. 2. A certain described portion of the tax certificates set forth in exhibit B were issued to Manitowoc county upon the sale of 1860, and were sold and assigned by it, and passed out of its treasury, to the town of Maple Grove in said county, more than six years before they were filed with the county board for allowance; and plaintiff's grantor purchased them from said town in 1874. 3. Certain other described tax certificates set forth in exhibit B were delivered as a gratuity to said town of Maple Grove in pursuance of a resolution of the county board passed November 28, 1870, and recited at length in the finding. These certificates, all of which were issued to the county upon the sale of 1860, were never indorsed by the county treasurer, nor assigned in any manner except by said resolution; no consideration therefor

ever passed from the town to the county; and plaintiff's title to them was derived from or through said town in 1874. 5. Plaintiff is the lawful owner and holder of certain described tax certificates set forth in exhibits A and C, the amount of which, with interest, is stated in the finding. 6. All the certificates mentioned in the foregoing findings were illegal and void for certain described irregularities in the proceedings. 7. For ten years prior to 1870, it had been the practice for the county treasurer of the defendant county "to pay to the several towns therein in tax certificates the balance due them for their delinquent lists returned and sold that year." The court further found, upon its own motion, that plaintiff paid a good and valuable consideration to the several towns and school districts which were his vendors, for all the certificates mentioned in the first three findings, but that he was not the owner of them, because said vendors had not the power to receive and convey the ownership thereof.

On these facts the court held, 1. That as to all the certificates described in the first and second findings the action was barred by the statute of limitations. 2. That the certificates described in the third finding constitute no valid claim against the county. 3. That plaintiff was entitled to recover the amount of the certificates described in the fifth finding, with interest. Judgment was rendered accordingly; and from so much thereof as was adverse to plaintiff's demand, he appealed.

*R. P. Eaton,* appellant, in person.

For the respondent, a brief was filed by *Nash & Schmitz,* and the cause was argued orally by *Mr. Nash.*

ORTON, J. The only questions raised by the findings and conclusions of law, and upon which the tax certificates forming a large part of the plaintiff's cause of action were excluded, are:—

1. Can tax certificates, issued to a county, be transferred by such county without assignment in writing?

2. Can a town become the purchaser and owner of tax certificates, and, if so, will the statute of limitation, sec. 1, ch. 112, Laws of 1867, run against such town while such owner?

These questions will be considered in their order.

1. Counties cannot become purchasers at tax sales, or owners of tax certificates, without express statutory authority, and such is the disability of all municipal corporations. *Knox v. Peterson*, 21 Wis., 247; *Sprague v. Cœnan*, 30 id., 209. Such authority is expressly given to counties, and under limitations, by sec. 9, ch. 22, Laws of 1859. Whether the power thus given to counties to purchase at tax sales, and hold tax certificates, implies the further power to sell such certificates and transfer them by proper assignment, it is not necessary to decide; for sec. 1, ch. 138, Laws of 1861, expressly confers such power, "to sell, and *transfer by assignment,* any certificate of sale of land for delinquent taxes, etc., to any person offering to purchase," etc.

The language is clear and explicit as to the necessity of an assignment in form to effect a transfer of such certificates; and other statutes authorize assignment by indorsement; and if such certificates are instruments of such a character that they cannot be transferred without assignment *in writing,* the first question is answered. A tax certificate is a certificate of the sale of land on account of the nonpayment of taxes, in consideration of the payment of such taxes by the purchaser, and entitles the holder, under certain conditions, to a legal conveyance of the land. It is in no sense a negotiable instrument, a chose in action, or a chattel interest. It is evidence of an equitable title to the land itself, and enables the purchaser, on certain conditions, and in a certain time, to call in the legal title. It savors so strongly of realty, that such title descends to the heir, and is not assets in the hands of the executor, and stands upon the same footing as a certificate of entry of government lands, or a certificate of purchase, made by a sheriff, of lands sold on execution. *Lessee of Rice v.*

*White*, 8 Ohio, 216; *Dikeman v. Dikeman*, 11 Paige, 484. In its essential character as conveying an interest in lands, it is precisely like what is called a school-land certificate, which this court has held can only be assigned in *writing*. *Smith v. Clark*, 7 Wis., 551. Without such an assignment in writing, the pretended purchaser and holder of the tax certificate cannot maintain an action against the county on the ground of the illegality of the taxes paid thereon, as in this case.

The circuit court properly excluded the tax certificates not thus assigned. *Capron v. The Board of Supervisors of Adams County*, 43 Wis., 613.

2. Whether towns are "*municipal corporations*," in a strict legal sense, is a question which the lamented Chief Justice WHITON, in *Norton v. Peck*, 3 Wis., 714, says "is not of easy solution;" but, in construing the meaning of this designation in the statute considered in that case, it was held that "*municipal corporations*," as used in the constitution of this state, do not embrace *towns*. Towns are often called in common parlance, and sometimes unguardedly in statutes, *municipal* corporations, in connection with counties, cities and villages; but when so called, it is in the sense of mere corporations, or *quasi* corporations, or of corporations *sub modo*, only, and not in the sense of municipalities proper.

These words, when used in our own statutes, must be received in their strict and constitutional sense, unless it was clearly the intention of the legislature, in a given statute, that they should have a more extended signification. No such intention seems to be apparent in the proviso of sec. 1, ch. 112, Laws of 1867, in the use of the words "counties or *municipal corporations;*" and this language should not be construed to embrace towns and school districts, but rather to exclude them.

Reference is here made to the above statute of limitation, because, if towns are embraced in the language used in said proviso, then the first part of this question is answered in the

affirmative, and it must be assumed that towns have the power to purchase and own tax certificates, and, as such owners, are exempt from the operation of that statute.

Cities and villages, by the statute, have the right to purchase at tax sales, and hold tax certificates, the same as counties; and they are strictly municipal corporations; so that the language of the proviso must be held to mean, counties and cities and villages, and any other municipal corporations *strictly* so called, and not to embrace towns, school districts and other *quasi* corporations. In *Knox v. Peterson* and *Sprague v. Cœnan, supra,* it is held that a city cannot purchase at tax sale without express authority by statute; and, though counties are allowed by statute to purchase at tax sales, they must follow strictly such authority, and cannot so purchase jointly with an individual; and towns are as limited in power in these respects as municipal corporations. Blackwell on Tax Titles, 449. If, then, a town cannot become a purchaser at a tax sale without express statutory authority, how can it be claimed that a town can become the purchaser of a tax certificate, either from a county or an individual, without such express authority?

The authority and consequences would be the same, whether a town should be the original purchaser or the assignee of such purchaser. What is not allowed to be done directly, cannot be done indirectly.

In either case, the town could sell the certificate or take a deed of the land, or, in case of the illegality of the tax, sue the county for the repayment of the consideration, or embark generally in tax-title dealings and speculations. Towns are the creatures of the law, with limited and clearly defined powers, and can do nothing which is not expressly authorized, or clearly implied from authority expressly conferred, within the scope of the legitimate objects and purposes of such a corporation; and certainly such objects and purposes do not embrace speculation in tax titles, so commonly attended with

litigation, perplexity and mischief. That towns, in certain limited and necessary cases, may take and hold real estate, is foreign to this question.

We conclude, then, that towns are not authorized to purchase or own tax certificates, and the intervention of a town, as the pretended owner of tax certificates, does not suspend the statutory limitation of action on such certificates.

*By the Court.* — The judgment of the circuit court is affirmed, with costs.