ELLIS R. THOMAS et al., Respondents, *v.* THOMAS J. EVANS et al., Appellants.

T. died in 1841 seized of eight lots in the city of W., which, by his will, he devised to his wife for life, remainder to his children, all of whom were infants. The wife was appointed executrix and guardian of the children. The executrix and executor were authorized to " sell the whole or any part of his real estate when they may deem it best for those interested therein * * * and invest the proceeds in bonds and mortgages or other securities as they may believe best." The widow intermarried with E., who made considerable improvements upon the property. He also, at the request of the executors, advanced the money to pay heavy assessments thereon for municipal improvements. In 1853 the executors sold and conveyed two of the lots, which were vacant and unimproved, to S. for $1,000 and a release by E. of the advances so made by him, the price paid being more than the value of the lots. S. erected buildings on said lots and in 1857 conveyed them to E. who put his deed on record, and thereafter, with the knowledge and acquiescence of the life tenants, claimed to own the property and made valuable improvements thereon. In an action brought by the children of T. in 1881, after the death of the life tenant, and more than twenty years after all the remaindermen became of age, to vacate and annul the deed to S. and all subsequent conveyances and to have the two lots, with the improvements, adjudged to be the property of plaintiffs, etc. *Held*, that, conceding the deed to S. to have been invalid (as to which *quære*), the relief sought should only be allowed on condition that the plaintiffs reimburse to E., the original price paid by S. and also all such sums as were expended by S. and E. in improvements, so far as they have increased the value of the premises, and, in case E. is charged with the rents received since the death of the life tenant, he should also be allowed interest on the amount payable to him.

Where a person in peaceable possession under claim of lawful title, but really under a defective title, has in good faith made permanent improvements, the true owner who seeks the aid of equity to establish his title will be compelled to reimburse the occupant for his expenditures.

(Argued April 25, 1887; decided June 7, 1887.)

APPEAL from judgment of the General Term of the Supreme Court in the second judicial department, entered upon an order made at the February Term 1885, which modified and affirmed, as modified, a judgment in favor of plaintiff,

entered upon a decision of the court on trial at Special Term and also affirming an interlocutory judgment herein.

The nature of the action and the material facts are stated in the opinion.

*George H. Starr* for appellants. The alleged executory agreement set forth in the complaint, being by parol, was void by the statute of frauds. (2 R. S., chap. 7, tit. 1, § 6.) Even had it been in writing, and to be deemed such an express trust as is authorized under section 55 of article 2 of the statute, it was void under section 14 of article 1 of the statute, because it was intended thereby to suspend the absolute power of alienation for more than two lives in being. (2 R. S., chap. 1, tit. 2, art. 1, § 14; id., art. 2, § 55; *Schetteler* v. *Smith,* 41 N. Y., 334.) The plaintiffs have no equity to maintain this bill. The inheritance was not injured, but received a large pecuniary benefit and was saved from loss by the sale of the two lots; and there was no fraud or bad faith shown. (Greenl. Cruise on R. Prop. tit. 15, chap. 4, § 55; *New* v. *Nicoll,* 73 N. Y. 127; *Austin* v. *Munroe,* 47 id., 366.) As the price paid was entirely adequate, and the avails went directly to the benefit of the estate in remainder, the bill should be dismissed. (*Osgood* v. *Franklin,* 2 Johns. Ch. 22–29; *Morse* v. *Royal,* 12 Vesey, 355; *Cobb* v. *Hatfield,* 46 N. Y. 535.) The will conferred upon the executors a valid power in trust over the proceeds of any real estate sold, to continue during the life of the life tenant. It was not a mere naked power of sale. (*Osgood* v. *Franklin,* 2 Johns. Ch. 1, 20, 22, 29; *Clark* v. *Clark,* 8 Paige, 152, 160, 161; *Livingston* v. *Murray,* 68 N. Y. 281, 282; *Champlin* v. *Haight,* 7 Hill, 245; *Hetzel* v. *Barber,* 69 N. Y. 1, 8.) Although not trustees of the proceeds in a strict sense, the terms of the power coupled with the law imposed the same duty as if they were. (*Skinner* v. *Quinn,* 43 N. Y. 103, 106; *Erwin* v. *Loper,* id. 525, 526; *Hepburn's Case,* 2 Bradf. 75; *Stilwell* v. *Doughty,* id. 311, 317, 318; *Osgood* v. *Franklin,* 2 Johns. Ch. 18, 22, 29; Perry on Trusts, §§ 457, 458; *In re Skingley,* 3 McN. & G.

221, 228; *In re Barrington's Settlement*, 1 J. & H. 143; *Harris* v. *Payner*, 1 Drewry's Ch. 182, 183; *Gregg* v. *Coates*, 23 Beav. 33–39; *Howard* v. *Ducam*, 1 T. & R. 81; *Sohier* v. *Eldredge*. 103 Mass. 345–354; *Parsons* v. *Winslow*, 16 id. 361; *Watts* v. *Howard*, 7 Met. 478; *Gambril* v. *Gambril*, 3 Md. Ch. 259; *Kearney* v. *Kearney*, 17 N. J. Eq. 70; *Lent* v. *Howard*, 89 N. Y. 178, 179; *Davis* v. *Stover*, 58 id. 474; *Young* v. *Brush*, 28 id. 671–674; *King* v. *Talbot*, 40 id. 83, 89; *Sutphen* v. *Ellis*, 35 Mich. 446.) Although executors or trustees cannot bind the estate upon executory contracts of their own, although beneficial to the estate, yet they can make such contracts an express charge upon the estate when within their discretion, and they appear to be for its benefit. (*New* v. *Nicoll*, 73 N. Y. 129; *Noyes* v. *Blankman*, 6 id. 567, 579, 580; *Randall* v. *Dusenberry*, 39 Supr. Ct. 174; 63 N. Y. 645.) The apportionment of the outlay for assessments and improvements as between tenant for life and remaindermen was on proper basis. (*Mosely* v. *Marshall*, 22 N. Y. 202; *Gunning* v. *Carman*, 3 Redf. 70; *Stillwell* v. *Doughty*, 2 Bradf. 311; *Williams* v. *Cox*, 3 Edw. Ch. 178; *Cavins* v. *Chabert*, id. 312; *Fleet* v. *Dorland*, 11 How. Pr. 491; *Est. W. E. Miller*, 1 Tuck. 346; 1 R. S. [6th ed.] chap. 13, tit. 3, §§ 149–158; *House* v. *House*, 10 Paige, 158; *Sohier* v. *Eldredge*, 103 Mass. 343, 344.) The sale should not be held voidable as within the rule that forbids a trustee to purchase the trust property. (*Davoue* v. *Fanning*, 2 Johns. Ch. 252, 271, 272; *Graves* v. *Waterman*, 63 N. Y. 657, 658; 2 R. S. [6th ed.] chap. 1, tit. 2, § 79; *Griswold* v. *Perry*, 7 Lans. 103, 105.) The power to sell and the control of the question of the propriety of the sale to Evans was vested in the executors, and the discretion was properly exercised, and a sale to him was as valid as to another unless there are facts to show that he owed some duty to the *cestui que trust* inconsistent with his making a purchase. (*Howard* v. *Ducam*, 1 T. & R. 81; *Diconson* v. *Talbot*, 6 L. R. Ch. 32; *Lloyd* v. *Johnes*, 9 Ves. 51; *Ten Eyck* v. *Craig*, 62 N. Y. 419, 427;

*Nellis* v. *Lathrop*, 22 Wend. 121 ; *McGuire* v. *McGowan,* 4 De Sauss. Ch. 486 ; Sugden on Powers, chap. 19, § 1, subd. 79, 80 [8 Lond. ed ] 867, 868 , Sugden on Vendors, chap. 20, § 2, subd. 15 [Perkin's 8th Am. ed.] 692; id. chap. 1, § 5, subd. 51 ; *Evans* v. *Peacock,* 16 Ves. 511 ; Perry on Trusts, § 511, 511 *a ; Osgood* v. *Franklin,* 2 Johns. Ch. 27–29.) The application of the proceeds to pay off the assessments, and to pay Evan's bill for improvements did not render the sale voidable. (*Davis* v. *Stover,* 85 N. Y. 474 ; *Lent* v. *Howard,* 89 id. 178, 179 ; *Diconson* v. *Talbot,* 6 L. R. Ch. 37.) Plaintiffs are estopped by lapse of time and acquiescence ; and the statute of limitations is a bar.   Adoption and ratification are to be presumed.   (*Loder* v. *Hatfield,* 71 N. Y. 103 ; Perry on Trusts, §§ 229, 230, 850–853 ; *Butler* v. *Haskell,* 4 De Sauss. 706, 707 ; *Scott* v. *Freeland,* 7 S. & M. 409 ; 45 Am. Dec. 310 ; *Musselman* v. *Eshleman,* 10 Penn. St. 394 ; *Bostwick* v. *Atkins,* 3 Comst. 53 ; *Van Dyke* v. *Johns,* 1 Del. Ch. 93 ; 12 Am. Dec. 76 ; *Ives* v. *Ashley,* 97 Mass. 198 ; *Salisbury* v. *Morss,* 7 Lans, 368 ; *Hawley* v *Cramer,* 4 Cow. 743.)   If the sale is to be avoided, defendant should be allowed the amount of the purchase-money, and the costs of the improvements put upon the two lots, with interest from the date of Mrs. Evans' death, and the property should be put up for resale.   (Sugden on Vendors, chap. 20, § 2, subd. 23, [2 Perkin's 8th Am. ed.] 694 ; *Evans* v. *Peacock,* 16 Ves. 511, 517 ; *Hawley* v. *Cramer,* 4 Cow. 744 ; *Davoue* v. *Fanning,* 2 Johns. Ch 252, 270, 272 ; *Michoud* v. *Girod,* 4 How. [U. S.] 552 ; *Ex parte Hughes,* 6 Ves. 617 ; *Ex parte James,* 8 id. 337, 350 ; *Ex parte Bennett,* 10 id. 385, 399 ; *York's Build'g Co.* v. *McKenzie,* 8 Brown's P. Cas. 42, 70, 71 ; *Lessee of Moody* v. *Van Dyck,* 4 Bin. 43, 44 ; *Bailey's Adm'x* v. *Robinson,* 1 Grat. 4 ; *Buckels* v. *Lafferty,* 2 Robinson [Va.] 292 ; *Gambril* v. *Gambril,* 3 Md. Ch. 260 ; *Bright* v. *Boyd,* 1 Story's Rep. 478 ; *Jones, Adm.* v. *Jones,* 4 Gill, 87 ; *Putnam* v. *Ritchie,* 6 Paige, 390, 402–406 ; *Mickles* v. *Dillaye,* 17 N. Y. 80 ; *Benedict* v. *Gilman,* 4 Paige, 58 ;

*Mad. Ave. Bap. Ch.* v. *Oliver St. Bap. Ch.,* 73 N. Y. 82, 98 ; *Ford* v. *Knapp,* 102 id. 137–143.)

*William G. Cooke* for respondents.    Under the will the widow took possession and control of the property for life. (*Jennings* v. *Conboy,* 73 N. Y. 236.)    The devise to the children was of a vested remainder in fee, limited upon the particular estate in the widow, and subject only to the proper execution of the power of sale conferred upon the executors. (*Morse* v. *Morse,* 85 N. Y. 58 ; *Manice* v. *Manice,* 43 id. 304 ; *Crittenden* v. *Fairchild,* 41 id. 289 ; *Hetzel* v. *Barber,* 69 id. 112 ; *Prentice* v. *Janssen,* 79 id. 479 ; *Hermans* v. *Robertson,* 64 id. 332.)    A power of sale, contained in a will, can be exercised only in the manner and for the precise purpose contemplated by the testator. (*Allen* v. *De Witt,* 3 N. Y. 276 ; *Roome* v. *Phillips,* 27 id. 357 ; *Russell* v. *Russell,* 36 id. 581 ; *Hetzel* v. *Barber,* 69 id. 1.)    It was not necessary as a condition of recovery in the action that plaintiffs should restore to defendant Evans the amount he paid for the land, nor has he any equitable lien for the value of his improvements.    (2 Kent, 76, 77, 81, 134 ; *Wood* v. *Wood,* 83 N. Y. 579 ; *Westervelt* v. *Gregg,* 12 id. 202 ; *Ryder* v. *Hulse,* 24 id. 372 ; *Cairnes* v. *Chabert,* 3 Edw. Ch. 312 ; *De Witt* v. *Cooper,* 18 Hun, 67 ; Washb. on Real Prop. [4th ed.] 123 ; *Mad. Ave. Bapt. Ch.* v. *Oliver St. Bapt. Ch.,* 73 N. Y. 96 ; *Moore* v. *Cable,* 1 Johns. Ch. 387 ; *Woodhull* v. *Rosenthal.* 61 N. Y. 382, 397.)

*William C. Wallace* for respondent.    The power in the will of Thomas Thomas was to dispose of his real estate as might be best for those interested therein and to invest the proceeds for their benefit.    This power could only be exercised for the preservation of the proceeds. (*Allen* v. *De Witt,* 3 N. Y. 280.)    It was the duty of the defendant Evans to keep the property free from taxes, and from the accumulation of interest on incumbrances.    (Washb. on Real Prop. 110 ; 4 Kent Com. 74 ; *Bidwell* v. *Greenshield,* 4 Abb. N. C. 427 ;

*Gillespie* v. *Brooks,* 2 Redf. 349 ; *Desraimes* v. *Desraimes,* 72 N. Y. 154.) The value of permanent improvements made by a life tenant cannot be charged against the remaindermen. (Washb. on Real Prop. 110, 112.) There does not appear any equitable ground upon which the remaindermen should be charged with any portion of these permanent improvements. (*In re Pollock,* 3 Redf. 100.)

Ruger, Ch. J. In July, 1841, Thomas Thomas died, leaving him surviving Catharine Thomas, his widow, and four children, three of whom were aged, respectively, three, five and six; the fourth, Sarah Thomas, has since died intestate and without issue. At the time of his death Thomas owned in fee eight small city lots in Williamsburg, six of which were situated on South First, and two, of lesser value, on South Second streets, and, with the exception of two lots on South First street, were vacant and unimproved. So far as appears from the case, Thomas had no other property, real or personal, and such as he had he devised to his widow for life, with remainder to his four children. By the will he appointed his wife executrix and John L. Bulkley executor of his estate, and authorized them to "sell the whole or any part of his real estate when they may deem best for those interested therein, either at public or private sale, and invest the proceeds in bonds and mortgages or other securities, as they may believe best." He also appointed his wife guardian of all of his children.

In December, 1841, the widow intermarried with the defendant Evans and lived with him as his wife until the year 1878, a period of thirty-seven years, and nearly twenty years after all the children had arrived at maturity.

It is conceded that by the will the widow took a life estate in the property of her husband, and that upon her marriage with Evans he became entitled to the enjoyment of her interest therein, and that the four children took a vested estate in remainder in such property. Between the years 1841 and 1850 the defendant Evans made considerable improvements

upon the property on South First street and rendered some
of it productive, which was before a burden and expense to
the estate.   For the purpose partly of paying the liability of
the estate to Evans for these improvements, and partly to
raise money to meet anticipated assessments upon the prop-
erty, the executors, in 1850, sold and conveyed to Evans, for
the agreed price of $1,000, the two vacant lots on South
Second street.   Three hundred and fifty dollars of this sum
was applied as a payment to Evans for the expenses incurred
by him, and the balance of $650 was secured by a mortgage
upon the property, given by Evans to the executors.   The
price paid was a fair consideration for the land, and all
parties then supposed that Evans acquired a valid title under
the power of sale contained in the will.   Subsequently, how-
ever, upon attempting to raise money upon the lots for
building purposes, Evans was advised that by reason of his
relationship with one of the grantors his title was defective,
and thereupon he consented to institute an action to have
such title declared void and to reinstate the power of sale in
the executors.   Such proceedings were thereupon had in the
Supreme Court that judgment was rendered declaring the
conveyance from the executors to Evans null and void and
reinstating them with the interest attempted to be conveyed.

Between 1850 and 1854 other assessments were levied
upon the property of the estate for municipal improvements
and the executors had no means to pay them.   These assess-
ments were mainly levied upon the lots on South First street.
At the request of the executors Evans advanced some money
to pay them, but the estate was still unable to meet the other
burdens upon the property.   Under the circumstances the
defendant Evans, under an agreement with one Swack-
hamer, to repurchase the property and repay him its cost
and such money as he should expend upon it with a bonus of
$500, for his risk and trouble, induced Swackhamer to enter
into a contract of purchase of the two lots on South Second
street with the executors for the price of $2,000.   In 1853,
the executors conveyed the property to Swackhamer, receiving

therefor $300 in cash, Swackhamer's note for $700, and a release by Evans to the executors of their indebtedness to him for money advanced and expended for assessments and improvements upon the property. The price paid was more than the value of the property and the Thomas estate received the full benefit thereof. It does not appear, that the executors had any knowledge of the agreement between Evans and Swackhamer, or that any of the parties had any doubt but that Swackhamer acquired a valid title to the property by the conveyance. Upon receiving his deed Swackhamer executed a mortgage upon the property to third parties for the sum of $4,500, which sum was wholly expended in erecting three substantial brick dwellings upon the two lots. In 1856, in accordance with his agreement with Evans, Swackhamer conveyed the property to him, receiving in payment therefor the sum of upward of $7,000. Immediately upon receiving his deed, Evans caused it to be placed upon record, and from that time forward, claimed to be the absolute owner of the property.

Since Evans' occupation of the lots, he has continued to make additions to and improvements upon them, the value of which, including the original cost of the houses, as found by the trial court, exceeded $9,000 at the time of the trial. In 1879, Evans conveyed to each of the two other defendants, Catharine J. Scofield and Jessie E. Scofield, one of the houses erected on the two lots on South Second street in consideration of his love and affection for them as his daughters.

This action was brought by two of the remaining children of Thomas, the other one refusing to join therein as a plaintiff, in April, 1881, for the purpose of vacating and annulling the deed given by the executors to Swackhamer, and all subsequent conveyances of the property, and having it adjudged that the two lots with their improvements were the property of the plaintiffs, and requiring the defendants to release and convey the property to them, and that the defendant, Thomas J. Evans, render an account of all of his transactions with the estate of Thomas Thomas, and be decreed

to pay to the plaintiffs such sums as might be found due upon such accounting. The right to relief was based exclusively upon the allegation in the complaint that the defendant Evans obtained title to the property from the executors " for the purpose of enabling the executors more conveniently to manage the said estate through the defendant Thomas J. Evans, and with a view to increase the revenue for the said real estate and to put the title thereof in the said Thomas J. Evans, as trustee for the said Catharine Evans and the children of the said Thomas Thomas, deceased."

Upon the trial no proof was offered by the plaintiffs of the existence of the trust and agreement alleged in the complaint, but the action was sustained upon the ground that the conveyance by which the land was transferred from the executors to Swackhamer was not a valid exercise of the power of sale given to them by the will of Thomas, and constituted a cloud upon the title of the true owners, which should be removed. The decree also denied to the defendant the right to compensation for the improvements made to the property by him. The ground upon which this conclusion was reached is stated to be that Evans was not a *bona fide* purchaser of the premises. This conclusion was based upon the finding of law made by the trial court, that neither Evans nor the other defendants were *bona fide* purchasers of the land.

It is not entirely clear what the trial court meant by this finding of law, but if it was intended to convey any other idea than that it was simply a legal deduction, from the assumed fact that the conveyances to Swackhamer and Evans were void, by reason of the alleged invalidity in the execution of the power of sale, it is contrary to the findings of fact made by the court, and is unsupported by any evidence in the case. It was found by the trial court, that from 1856 Evans always claimed to be the absolute owner of the property, and that this claim was known to, and acquiesced in by the plaintiffs appears from the allegations of the complaint. It is therein averred that " the plaintiffs have all been for many

years of full age and have not requested the transfer of said title to them because of the positive assurance they all had from the said defendant, and from the said testatrix, in her lifetime, that the same was held for the estate, and because their mother, the said testatrix, was entitled to the income of the same until her death." This excuse, so far as it alleges any assurance from the defendant Evans, or his wife, of the existence of a trust, is not, as we have seen, supported by the evidence.

It also appears that some, if not all, of the surviving children of Thomas, after their majority, had knowledge of the expenditures that the defendant Evans made, not only upon the property in dispute, but also upon the other real estate remaining unsold, and so far from making any objection thereto, actually requested them to be made.

A careful perusal of the evidence in the case shows us that Evans, in the right of his wife, came into the possession of the eight lots in 1841, and although both he, and the estate were destitute of means to improve it or to pay the taxes or assessments levied thereon, it was so managed as to make it more valuable and productive, and to preserve for the remaindermen the greater part of the estate. In the meanwhile he provided a home for the widow and children of Thomas, and educated and supported the children, not only until their majority, but some of them until long after that time. Under these circumstances it is not strange that the remaindermen have hesitated so long to assert any rights to the two lots in question, and that one of them refused altogether to become a party to the proceeding.

A claim to recover back property which has been fairly sold and paid for at its full value, and the consideration of which has accrued to the benefit of the plaintiffs, without offering to render compensation to one who, honestly believing himself to be its lawful owner, expended large sums in its improvement, and which now constitutes its greatest value, seems to be unjust and inequitable.

We are of the opinion that the purchase-price originally

paid for the land and the value of the improvements, to the extent that they have added to its permanent value, constitute an equitable claim, and that even if the plaintiffs should establish an equitable right to the property it would not entitle them to judgment therefor, except upon the condition of refunding to the defendant Evans the amount so expended.

It was found by the trial court that the purchase-price was mainly paid in relieving the land from the assessments imposed upon it. These assessments were a charge upon all of the land, and the interest of the remaindermen, as well as that of the life tenant, was liable to be sold therefor. It is provided by statute, in the case of real property in which several persons have successive interests, incumbered by taxes and assessments, rendering it liable to sale therefor, that upon the application of any of the parties interested the court may order a sale of the fee or a part thereof, for the purpose of discharging the liens upon the remainder. (Chap. 341 Laws of 1841 ; chap 357 Laws of 1855 ; *Jackson* v. *Babcock*, 16 N. Y. 246 ; *Dikeman* v. *Dikeman*, 11 Paige 484.) Thus the property of the plaintiffs was legally liable for the payment of these assessments. Although the method provided by statute was not pursued, we see no reason why a court of equity, called upon to settle the equitable rights of the parties, should not charge remaindermen with the reimbursement of moneys actually and honestly expended for the benefit of their estate, and which they were legally liable to pay.

The general rule applicable to the relation of life tenants and remaindermen, does not authorize the former to charge the latter with the cost and expense of permanent improvements put upon the property by him during the life tenancy. (*Dent* v. *Dent*, 30 Bev. 363 ; *Moore* v. *Cable*, 1 Johns. Ch. 385.) This rule is founded upon principles of justice having reference to the rights and interests of remaindermen, and should not be inconsiderately impaired or evaded.

It is also the general rule that municipal assessments for permanent improvements upon land, are apportionable between the life tenant and the remaindermen, according to the circum-

stances of the case, and their respective interests in the property (*Stillwell* v. *Doughty*, 3 Bradf. 359 ; *Peck*. v. *Sherwood*, 56 N. Y. 615), while the ordinary taxes of government are properly chargeable to the life tenant alone. (*Deraismes* v. *Deraismes*, 72 N. Y. 154 ; *Cairns* v. *Chabert*, 3 Edw. Ch. 312.) Such are the rules applicable to those relations, when they are open and acknowledged, and no special circumstances exist authorizing the application of principles of equity, to reimburse one who, in good faith, has increased the intrinsic value of the property, by expending his own means in making permanent erections and valuable additions thereto under the belief that he was its lawful owner. Such circumstances are held to exist when a trustee or mortgagee in possession supposing, in good faith, that he has acquired title in fee to the property, goes on and deals with it as his own, and makes improvements which are of permanent benefit to the property. (*Putnam* v. *Ritchie*, 6 Paige, 390 ; *Mickles* v. *Dillaye*, 17 N. Y. 86.) In the *Putman Case* the chancellor laid down the rule, as expressed in the head-note, that "when industrial accessions have been made to property, in good faith, by a person who has the legal title to the property, so that the real owner is compelled to resort to a court of equity to assert his equitable title to such property, this court acts upon the civil law rule of natural equity and compels the complainant to compensate the adverse party for such industrial accessions or improvements, as a condition of granting the equitable relief asked for in the suit." This was the case of a guardian in socage of infants having a leasehold estate in fee in certain lands, which lease during the infancy of the wards was for a good consideration, surrendered by such guardian to the heir of the lessor It was held that a guardian in socage has no right to surrender a lease in fee belonging to his wards, but that when the legal title is in a trustee, or when the guardian of an infant has complete legal control over the property so as to place it fully within the power of the chancellor, as the general guardian of infants, the court may sanction the acts of the trustee, or guardian,

althrough not strictly legal, if the same are done in good faith and for the benefit of the estate of the infant.

In *Mickles* v. *Dillaye* (17 N. Y. 80, 86) the rule was applied to a mortgagor who attempted to redeem from a mortgagee in possession under a voidable sale, and the rule adopted is expressed in the head-note of the case as follows: " When valuable and permanent improvements have been made in good faith by a person standing upon the legal footing of a mortgagee in possession, but who supposed himself to have acquired the absolute title, and such mistake was favored by the omission of the owner, for several years before and after the improvements, to assert any interest in the premises, the mortgagor, on asking the aid of equity to redeem, will be compelled to allow the value of the improvements, though exceeding the rents and profits received."

In *Bright* v. *Boyd* (1 Story, 478) lands had been sold by an administrator, but the sale was void because he had not given security according to the statute. The heir sued the purchaser and recovered possession of the land. The purchaser, then filed his bill in equity to recover from the heir the value of certain improvements, including the cost of building a large dwelling-house, which he had in good faith put upon the premises while occupying them. Judge STORY referred the case to a master to take an account of the enhanced value of the premises, with a strong intimation that the plaintiff was entitled to recover that expense, but postponed the final decision of the question until the coming in of the master's report.

Judge DENIO, citing this case in *Mickles* v. *Dillaye*, entertained some doubt whether it could be sustained here except upon the principle of estoppel against one fraudulently standing by and seeing another expend money upon his land, although he expressly approved the rule laid down by the chancellor in *Putman* v. *Ritchie*. In the same case he also approved of the doctrine laid down by Judge HAND in *Wetmore* v. *Roberts* (10 How. Pr. R. 51). In that case the defendant had bought the premises from one who had pur-

chased them upon a sale on a prior mortgage, in the fore-
closure of which a junior mortgagee, had not been made a
party. Upon a foreclosure of the junior mortgage it was
held that the premises should be sold and the defendant
should be paid from the purchase-money, not only the amount
due on the elder mortgage, but also for improvements made
by him during his occupation of the property.

In *Miner* v. *Beekman* (50 N. Y. 339), it was said by
Grover, J., that " when a plaintiff has permitted his right to
satisfy a mortgage to remain dormant for nearly thirty years,
during which others have paid the assessments and taxes, and
made improvements in the belief that they had title under a
foreclosure of the mortgage, he cannot complain that, as a
condition of regaining possession, he is compelled to account
for and pay such taxes, assessments, and for such improve-
ments, according to the just and enlightened principles of
courts of equity."

Pomeroy, in a note to section 1242 of his work on Equity
Jurisprudence, states the rule as follows : " When a person in
peaceable possession under claim of lawful title, but really
under a defective title, has, in good faith, made permanent
improvements, the true owner who seeks the aid of equity to
establish his own title will be compelled to reimburse the
occupant for his expenditure."

Many authorities are cited in support of the proposition.
In *Ford* v. *Knapp* (102 N. Y. 135), the principle is laid down
that in an action by a co-tenant out of possession for a parti-
tion of the premises, upon which the other tenants in common
have paid taxes and made improvements in good faith, which
have largely increased the value of the property, the amount
of such taxes and improvements shall in case of ' sale of the
property " be first deducted from the gross sum received, and
paid to the improving tenants, and the balance only divided
among the parties according to their respective interests. The
case was decided upon the rule " that one who seeks equity
must do equity," and that the tenant, out of the actual occu-
pation who seeks a court of equity to award him partition, is

entitled to relief only upon condition that the equitable rights of his co-tenants shall be respected." We think the circumstances of this case bring it within the principle of the cases above cited.

Previous to the year 1860 all of the remaindermen had arrived at years of maturity and were aware that the defendant Evans claimed to be the absolute owner of the property in question. For over twenty years they not only neglected to dispute such claim, but permitted the defendant to go on in apparent security as to his title, and make improvements upon the property and deal with it as his own. There seems to exist here the natural equity which entitles a party, who has, in good faith, with his own means, improved the property of another, to reimbursement by the parties benefited thereby, and this equity is strengthened by the conduct of the owners who stood by and saw such party, without notice or objection, incur expense under the belief that he was improving his own property.

We are, therefore, of the opinion that the trial court should have imposed, as the condition of any relief to the plaintiffs the reimbursement by them to Evans of the original price paid by Swackhamer for the lots, and also of such sums as were expended by Swackhamer and Evans in their improvements, so far as they have increased the value of the land, and in case Evans is charged with the rents received from the property since the death of the life tenant, he should be allowed interest on the amount payable to him.

The plaintiffs have sought their remedy in equity, and that course seems to have been requisite as the condition of a right to the relief demanded. The deed from the executors to Swackhamer apparently conferred the legal title under the power of sale contained in the will. The purchaser was under no responsibility for any misapplication by the executors of the consideration paid by him for the land, and was entitled to rely upon their apparent power to receive such consideration and to convey the land given to them by the will. (3 R. S. [7th ed.], 2183, § 66.) We have altogether refrained

from, discussing the question as to whether the conveyance by the executors to Swackhamer was a valid execution of the power of sale.

There seems to be much reason for saying, under the peculiar condition of this property, its unproductive character and the want of means in which the testator left his family, the liability of the property to be sold for taxes and assessments for municipal purposes, that the real limitation intended to be put by the testator upon the power of sale, was contained in the words that it should be sold when his executors "may deem best for those interested therein," and not in the language by which they were directed " to invest the proceeds in bonds and mortgages or other securities as they may believe best." Some diversity of opinion, however, exists among the members of the court upon this question, and we, therefore, refrain from determining it, believing that the point decided will substantially dispose of the case upon a retrial.

The judgments, both interlocutory and final, of the courts below should be reversed, and a new trial ordered, with costs to abide the event.

All concur.

Judgment accordingly.