### LINCOLN v. ORTHWEIN et al.

(Circuit Court of Appeals, Fifth Circuit. March 3, 1903.)

#### No. 1,182.

1. PARTNERSHIP—DISSOLUTION—DEATH OF PARTNER.

A partner may provide by his will that the partnership shall continue after his death, and, if assented to by the other partners, such provision becomes effective, and the partnership is not dissolved by his death, nor are contracts previously made, and depending on the continuance of the partnership, terminated thereby.

2. SAME—CONTINUANCE AFTER DEATH OF PARTNER—EFFECT ON OUTSTANDING CONTRACT FOR SERVICES.

Plaintiff entered into a written contract with a partnership for the stevedoring of all the vessels owned or controlled by the partnership at the port of New Orleans for 12 months beginning October 1st at prices therein fixed, the work to be done in a first-class manner. After the contract had been entered upon, one of the partners died, but left a will directing his executors (who were his sons and copartners) to continue the partnership until July 1st following his death, which they did. Both parties to the contract continued to recognize and perform the same until about June 1st, when it was terminated by the surviving partners. Held, that the contract was not terminated by the death of the deceased partner, and that plaintiff could maintain an action for its breach by its termination before July 1st.

3. CONTRACT—ACTION FOR BREACH—ISSUES FOR JURY.

In an action for the breach of such contract the only defenses alleged in the answer were that plaintiff did not perform the contract on his part in accordance with its terms and a denial of any damage to him resulting from its termination. Held, that under the pleadings the question whether the defendants were justified in terminating the contract, depended upon the determination of the issue as to performance by plaintiff, which was one of fact for the jury.

4. SAME—DAMAGES—EVIDENCE.

Defendants, who, by wrongfully terminating a contract by which plaintiff was to have the stevedoring of certain ships during a stated time at fixed prices, have rendered it difficult or impossible for him to prove his exact damages, cannot, for that reason, defeat his recovery for breach of the contract, but he is entitled to approximate his damages by the best evidence obtainable.

---

¶ 1. See Partnership, vol. 38, Cent. Dig. § 554.

In Error to the Circuit Court of the United States for the Eastern District of Louisiana.

July 19, 1899, plaintiff filed his petition in the civil district court for the parish of Orleans. Therein he represented that on September 30, 1898, he entered into a written contract with Chas. F. Orthwein & Sons to have and to perform all the stevedore work, loading and discharging vessels at the port of Orleans consigned to and chartered by them, in all cases where that work was controlled by them, and especially of certain lines of vessels named in the contract; that the contract was to begin on October 1, 1898, and continue for 12 months; that the work was to be done in first-class manner, under petitioner's personal supervision, and with as quick dispatch as could be by any other stevedore in port, the cargoes to be stored, dunnaged, and separated to the satisfaction of the defendants, captains of steamers, and surveyors. After reciting the scale of prices for which the work was to be done, the petition further shows: That up to May 26, 1898, the plaintiff performed all the work and duties required of him under the contract in thorough first-class manner, and in all respects conformed to and complied with the terms thereof; but that on or about that date, and "without lawful cause, and wrongfully, and in disregard and violation of said contract," the defendants peremptorily refused to permit him to perform his work and duties thereunder, although a large number of the vessels mentioned in the contract arrived and were afterwards loaded by other stevedores employed by the defendants, but which vessels he was entitled and had the right to stevedore and load under the contract. The petition further represents that by the conduct of defendants, as recited, he was deprived of and prevented from earning under said contract and damaged and injured up to the time of filing his suit in the sum of $3,232.09, "actual profits he would have earned" if he had not been prevented, as stated, by the unlawful conduct of defendants. He annexes to his petition an Exhibit X, which is a list of vessels arriving to the defendants at the port of New Orleans between the date (May 26th) of the breach of the contract and that of filing the suit, and then discharged or loaded or stevedored, and all of which work he was entitled to perform under the contract; which exhibit shows, also, the tonnage of the several vessels, and the profits he would have made under the contract. The petition also shows that the senior member of the firm. Charles F. Orthwein, died. The other members reorganized on July 1, 1899, under the style of Charles F. Orthwein's Sons, and in fact and law assumed all the obligations and liabilities of the old firm in, to, and under the said contract. There was prayer for the citation of Charles F. Orthwein & Sons in liquidation, and William J. Orthwein and Charles C. Orthwein, the surviving members of the firm, and of William J. Orthwein, executor of Charles F. Orthwein, deceased member of the firm, and of Charles F. Orthwein's Sons, and William J. Orthwein and Charles C. Orthwein, the members of the commercial firm, and for judgment against the several defendants cited in solido for $3,232.09.

The contract sued on is in the form of a "bid" by plaintiff to Charles F. Orthwein & Sons, and is accepted and signed for them by Wm. P. Ross, manager, steamship department. The first paragraph reads: "I hereby make the following bid for all the stevedore work, loading and discharging vessels at this port consigned to or chartered by you, where you control said work, to wit: The Head Line, Forendo Gulf Baltic Line, Creole Line, Hamburg-American Packet Line, Phelps' Texas Transport Line, Orthwein's Gulf Ports Line, and such other lines as you may acquire and on which you have the authority to provide the stevedore under this tender. This contract commencing from the first day of October next, and to continue for twelve months thereafter." Second paragraph: "The work to be done in a first-class manner, under the personal supervision of the undersigned, and to be done with as quick dispatch as can be carried out by any other stevedore of the port. The cargoes to be stowed, dunnaged, and separated to the satisfaction of yourselves, captains of steamers, and surveyors."

On the petition of William J. Orthwein, the cause was removed from the civil district court to the United States Circuit Court. The answer was filed in the name of William J. Orthwein individually, as one of the members of the

120 F.—56

late firm of Chas. F. Orthwein & Sons, and as one of the liquidators of that firm, and as one of the executors of the estate of Charles F. Orthwein, deceased. The answer pleads, first, the general issue. It admits the making of the contract sued on, and the termination thereof "by the said Charles F. Orthwein & Sons on the 26th day of May, 1899." It specially denies that plaintiff "performed all the work and duties required of him under said contract up to the date of the termination thereof in thorough, first-class manner, and in all respects conformed to and complied with the terms of said contract, as alleged in plaintiff's petition; and defendant avers that the plaintiff did not perform the work required of him under said contract in first-class manner; nor did plaintiff give his personal supervision to all the work and duties required of him under said contract; nor were the cargoes stowed by plaintiff under said contract stowed, dunnaged, and separated to the satisfaction of said Chas. F. Orthwein & Sons, captains of steamers, and surveyors, and the said Chas. F. Orthwein & Sons rightfully terminated the said contract; and respondent specially denies that the said Chas. F. Orthwein & Sons in any way disregarded or violated said contract, and avers that the said Chas. F. Orthwein & Sons in every way kept and performed the obligations and undertakings in said contract imposed on them, and faithfully carried out the same, but that the plaintiff, without lawful cause and wrongfully disregarded and violated the terms and conditions of said contract, and failed and neglected to do the work of stowing the cargoes in the vessels in first-class manner, and to give personal supervision to the work under said contract, and to stow, dunnage, and separate the cargoes to the satisfaction of the said Chas. F. Orthwein & Sons, the captains of the steamers, and the surveyors. The answer also denies the right of plaintiff to act as stevedore in respect to any vessel after the termination of the contract. It also denies plaintiff's right to damages, and denies that, even if the contract had not been terminated, he would have earned the profits alleged.

The case came on for trial March 7, 1901. A jury was impaneled to hear the same, and, after hearing the pleadings, evidence, and testimony in part on that day, it was ordered that the cause and trial be continued until next day. On the next day the trial was resumed, and the hearing proceeded for that day, and was then continued until March 13th, when the hearing was again resumed, and at the close of that day was continued to the next day. Like resumptions of the hearings and the like continuances thereof were had on March 15th, 18th, 19th, 20th, 21st, 22d, 23d, 25th, 29th, and on April 4th, 5th, 6th, 8th, and 10th. A hundred witnesses or more were examined, and much written evidence admitted, and argument of counsel heard from time to time, and argument appears to have been heard continuously at each of the sittings of the court from April 6th to and on April 10th, on which day, after having heard counsel for both parties sufficiently, the court directed the jury to find a verdict in favor of the defendants. This direction the jury at once obeyed, and thereupon it was ordered that the verdict be recorded, which was done accordingly, and judgment given thereon.

The plaintiff duly moved for a new trial. The court set this motion down to be heard on the 20th day of April, 1901. On that day the motion came on to be heard, was argued by counsel for the parties respectively, and submitted to the court, when "the court took time to consider." On June 11, 1901, the court ordered that the rule for new trial herein filed by the plaintiff be continued over to the next term of the court. On January 22, 1902, the court ordered that this motion be fixed for trial on Saturday, February 1, 1902. On which day the case came on to be heard, and the motion was argued by counsel, and submitted to the court. "The court took time to consider." On April 14, 1902, the court granted the motion. The verdict and judgment which had been rendered were set aside, and the cause was set for trial on Tuesday, April 15, 1902. The transcript does not show that any action was taken on April 15th, but on April 18th an order was entered to let an amended and supplemental petition be filed. This new pleading reiterates the allegations contained in former pleadings, and further alleges that during the existence of the contract sued on, to wit, about the 28th day of December, 1898, Chas. F. Orthwein, one of the members of the firm of Chas. F. Orthwein & Sons, departed this life in the state of Missouri, testate; that his will

had been duly admitted to probate in that state, a duly authenticated copy of which and of the probate was attached to this pleading. This will shows that the testator gave to his executors authority and power to leave the whole of his shares or interest in the copartnership of Chas. F. Orthwein & Sons in the business of the copartnership until the 1st day of July following their taking charge of his estate, to wit, until the 1st day of July, 1899; the interest during the period of its continuance in the firm to share in the profits and losses as during the testator's life. The new pleading avers that the executors and the surviving members of the partnership consented to and agreed to the continuance of the partnership as provided for in the will, and the partnership did continue in fact until the 1st day of July, 1899, subject to all the contracts and obligations entered into by the partnership existing at the time of the decease of the testator, and subject to the obligations herein sued on, and liable for all damages accruing to petitioner as set forth in his previous pleading. It prayed process of citation and judgment against all of the defendants. Service of this petition was accepted, and citation waived by W. J. Orthwein individually and as one of the members of the late firm of Chas. F. Orthwein & Sons, and as one of the liquidators of said firm, and as one of the executors of the estate of Chas. F. Orthwein. On the same day Wm. J. Orthwein, in the capacities just above noted, filed a general denial to all and singular the allegations of this petition, except as to the existence of the will. On the same day (April 18th) a jury was impaneled, and substantially the same evidence, with the addition of the will and proof of its probate, was put before the court in bulk, without the delay and labor of going through another trial in detail (the testimony of the witnesses on the former trial having been reduced to writing), and the court again directed a verdict for the defendant.

Chas. S. Rice, for plaintiff in error.

J. Ward Gurley, for defendants in error.

Before PARDEE, McCORMICK, and SHELBY, Circuit Judges.

McCORMICK, Circuit Judge, after stating the case as above, delivered the opinion of the court.

The first and the second of the errors assigned are substantially one, to the effect that the court erred in directing the jury to find a verdict for the defendants. The other was not argued, and will not be considered. The contract which is the basis of this action provides that one of the parties thereto shall furnish to the other designated employment, and that the other shall furnish designated services at stipulated prices therefor; the mutual transactions contemplated by it to begin on the 1st of October, 1898, and to continue for a period of 12 months thereafter. In the nature of the subject of the contract and of the terms thereof, if the plaintiff, who was the sole contracting party on his part, had died within the 12 months next after the 1st of October, 1898, such death would have terminated the contract. The party of the other part thereto being a trading partnership consisting of three individual members, the death of one of the members might or might not terminate the contract, because such death might or might not actually dissolve the partnership. While it is true, as a general rule, that the death of one of the partners dissolves the partnership by operation of law, it is competent for partners to provide against that contingency by their previous agreement, and a partner may, by his will, provide that the partnership shall continue notwithstanding his death, and if this is consented to by the surviving partners it becomes obligatory, just as though if the

testator, being a sole trader, had provided for the continuance of his trade by the executor after his death. Burwell v. Mandeville's Executor, 2 How. 560–576, 11 L. Ed. 378. The will of Chas. F. Orthwein appointed his two sons, Wm. J. Orthwein and Charles C. Orthwein (who were the other members of the firm of Chas. F. Orthwein & Sons), independent executors of his will, without bond, and with the fullest powers, and provided that:

"To facilitate the advantageous winding up of our partnership affairs, I give my executors authority and power to leave the whole of my shares or interest in the partnership of Chas. F. Orthwein & Sons in said business until the first day of July following their taking charge of my estate. My said interest during said period of its continuance in said firm to share in the profits and losses of the business as theretofore."

This will is dated December 22, 1898, and was duly probated January 3, 1899.

On the part of the partnership the contract was signed: "Chas. F. Orthwein & Sons. Wm. H. Ross, Manager Steamship Department." Mr. Ross testified on the trial that he attended to the making of the contract on behalf of Orthwein & Sons; that he was in consultation with Wm. J. Orthwein, and no one else; that, though it bore date September 30th, it was not signed on behalf of the partnership until he had consulted the various lines of steamers. He could not fix with certainty the date when it was signed, but thought it was about Christmas, or the 1st of January after its date. He testifies that Wm. J. Orthwein was in New Orleans, where the office of the manager of the steamship business of Chas. F. Orthwein & Sons was located, in February after the death of Mr. Chas. F. Orthwein. It is not disputed that the work went on under the contract in question continuously from the date of the death (in December) of Chas. F. Orthwein until the 26th day of May following. There is proof tending to show that both of the surviving partners accepted as executors named in the will of their deceased father, who had been the senior partner, and that they did, according to the terms of the will, continue the business until the 1st of July, 1899. "Wm. J. Orthwein, as one of the members of the late firm of Chas. F. Orthwein & Sons, and as one of the liquidators of said late firm, and as one of the executors of the estate of Chas. F. Orthwein, deceased," in answer to the plaintiff's suit, denies all and singular the allegations thereof, "except in so far as may be hereinafter specially admitted." The answer then "admits the making of the certain contract between the said late firm of Chas. F. Orthwein & Sons and the plaintiff, of which a copy is attached to and filed with the original petition herein, and respondent admits the termination of said contract by the said Chas. F. Orthwein & Sons on the 26th day of May, 1899." This termination of the contract by Chas. F. Orthwein & Sons took place after the expiration of five months from the date of the death of Chas. F. Orthwein, and within five weeks of the date when it would have been terminated by the termination of the partnership under the terms of the testator's will. The answer does not claim that the contract with the plaintiff was terminated by or on account of the death of Chas. F. Orthwein, but it denies that the plaintiff

had performed all of the work and duty required of him under the contract up to the 26th day of May; and avers that he did not perform the work required of him under the same in a first-class manner, and did not give his personal supervision to the work and duties required of him thereunder. Nor were the cargoes stowed by him stowed, dunnaged, and separated to the satisfaction of Chas. F. Orthwein & Sons, captains of steamers, and surveyors, and that Chas. F. Orthwein & Sons rightfully terminated the contract. The contract provided that the work to be done by the plaintiff should be done in a first-class manner, under the personal supervision of the plaintiff, and with as quick dispatch as could be carried out by any other stevedore of the port of New Orleans; the cargoes to be stowed, dunnaged, and separated to the satisfaction of Chas. F. Orthwein & Sons, captains of steamers, and surveyors. It was conceded on the hearing before us by the able counsel who represented the defendants in error, that the provision that the cargoes "should be stowed, dunnaged, and separated to the satisfaction of Chas. F. Orthwein & Sons, captains of steamers, and surveyors," meant in such a manner that the parties named ought, as reasonable men, to be satisfied therewith. This concession was required, not only by sound reason, but by recognized authority. Hawkins v. Graham, 149 Mass. 284, 21 N. E. 312, 14 Am. St. Rep. 422. Whether work done on the part of the plaintiff under the contract had been done in a first-class manner, under his personal supervision, and with the required dispatch, and the cargoes stowed, dunnaged, and separated in such a manner as should have satisfied the other party, captains of steamers and surveyors, presented issues of fact to be found by the jury. On these issues there was substantial conflict in the great volume of the proof offered and admitted on the trial. Whether, therefore, Chas. F. Orthwein & Sons did rightfully terminate the contract on May 26, 1899, must depend on the findings of the jury on the issues of fact just stated. They had submitted their offers to the various stevedores in the port of New Orleans. The plaintiff had made the detailed bid set out in the contract, based on the continuance of the relations for a period of 12 months, which period of continuance had, in the nature of such things, affected the price favorably to the defendant partnership. This the partnership had accepted and received the benefit of, not only up to the death of the deceased partner, but for five months thereafter. And the survivors and executors of the will of the deceased, having so acted after the death of their testator, could not capriciously terminate the contract before the 1st day of July, the limit imposed by the will, any more than the partnership could have done so before the expiration of the 12 months had the death not occurred. If the jury find from the proof that the contract was rightfully terminated on May 26th, then they need not inquire further, as in that case the plaintiff would have no right to recover. If, on the other hand, the jury find that it was not rightfully terminated, they should be charged to inquire further, and determine from the whole proof whether the plaintiff has been damaged by the wrongful termination, limiting the inquiry to the 1st of July, 1899, and find the extent of that damage, if any is shown to have resulted.

The answer of the respondent specially denies that the plaintiff has been deprived of and prevented from earning the sums of money averred in his petition, and specially denies that the profits to plaintiff on work properly performed under the contract, if it had not been terminated, would have equaled the rate and figures stated by the plaintiff; and avers that the rate and amount of profits which the plaintiff claims he would have made for work under the contract, if it had not been terminated, are grossly exaggerated and overstated. This also presents an issue of fact, which, however difficult it may be for the jury to determine from such proof as the subject permits, is one which should be submitted to them. The defendant insists that the plaintiff cannot know, and hence cannot prove, that he would have made any profit on the stevedore work, loading and discharging the vessels consigned to or chartered by the respondents, and loaded or discharged at the port of New Orleans, after the 26th of May, and prior to the 1st of July. Here it should be borne in mind that the difficulty of making direct proof springs, like the plaintiff's right to recover the damages, out of the wrongful act of the respondents, who should not be suffered to reap advantage from their own wrong by requiring that kind of proof which their wrongful action has rendered it impossible or difficult for the plaintiff to obtain, while it is fully and easily at their command. On this issue the plaintiff testified:

"I took the net registered tonnage from the time I commenced the contract until it was broken. That amounted to so many tons—I cannot remember— and my profits for that length of time was so much. I figured out that I made so much on the registered tonnage of these ships, and from that time on until the contract should have run out I kept a record of the vessels that came here consigned to them that I should have had, and I figured them on the same basis, as I say, of that amount on the same vessel." Being asked, "What does the document now exhibited to you represent?" he answered: "This paper first shows the list of the vessels I loaded up to that time, the 26th of May, when this contract was terminated, and in that list it shows the profits I made at that time on that number of vessels. It shows the name and tonnage of each vessel."

He then presented also another list, which he said represented the vessels that he should have had up to the time his contract ran out, figured on the same basis. In reference to this method of showing net profits actually made during the eight months that the contract was recognized and running, and the estimation on this basis of the profits that reasonably would have accrued on the work that should have been furnished the plaintiff and done by him on and after the 26th of May until the 1st of July, the witness Wm. P. Ross, who, as "manager of the steamship business" for the respondents, had made the contract, being asked, "What do you say as to the fairness of the calculations made by Mr. Lincoln?" said, "I do not know of any other method that would be as fair, because it deals with so many kinds of cargoes, and it all resolves itself into so many tons after all, whether it is the net register or actual cargoes does not matter."

It is clear to us that these issues of fact should have been submitted to the jury, and that the Circuit Court erred in withdrawing the case from the jury by directing a verdict for the defendants. Therefore the judgment is reversed, and the cause remanded to the Circuit Court, with direction to that court to award the plaintiff a new trial.