## SHIELDS v. NORTON.

(Circuit Court of Appeals, Second Circuit. January 18, 1906.)

### No. 78.

1. EVIDENCE—EXPERTS—KNOWLEDGE OF FACTS.

Where, in an action for breach of a contract for the laying of water pipes, a witness, qualified as an expert, testified that he was familiar with the work done, had seen it going on from time to time, knew the general conditions existing in the trenches, the dimensions of the trench in question, that he had removed a portion of the excavated materials, and knew the character of the excavation necessary for laying such pipe; and, on redirect examination, his attention was called to the actual conditions and the quantities of earth and rock taken from the particular trench and used in backfill, he was properly allowed to testify as to the average cost of the performance of the balance of the work which plaintiff had not been permitted to do, though he admitted on cross-examination that he did not know the quantities of earth and rock taken from the trench or used in backfill or the details of the work.

[Ed. Note.—For cases in point, see vol. 20, Cent. Dig. Evidence, § 2331.]

2. SAME—DAMAGES—BREACH OF CONTRACT—CHARACTER OF PROOF.

Where, in an action for damages for breach of a contract for the laying of water pipes, the difficulty of proving the actual damage by proof of all the conditions of quantity, location, and classification of work and materials, resulted from defendant's wrongful act in refusing to permit plaintiff to complete his contract, plaintiff was entitled to prove his damage by expert estimates.

[Ed. Note.—For cases in point, see vol. 20, Cent. Dig. Evidence, § 2342.]

3. APPEAL—QUESTION FOR COURT—SUBMISSION TO JURY—HARMLESS ERROR.

Where a contract required that plaintiff should lay certain water pipes in a street "including excavation, backfill, and all connections," plaintiff was not bound to pay the expense of having the city authorities cut off the water in order to make the connections, and hence defendant was not prejudiced by the court's error in submitting such question to the jury.

4. EVIDENCE—PURPOSE—BEST AND SECONDARY EVIDENCE—WRITTEN CONTRACT
—EXPLANATION.

In an action for breach of a contract for the laying of water pipes, defendant testified on direct examination that he had such contract and offered letters to fix its date. He also testified to a conversation with plaintiff about the work which his contract did not cover, and his understanding as to what certain third persons would allow him to do beyond a certain point. *Held*, that questions asked him on cross-examination as to his understanding of the way in which he was obliged to carry on the work merely to require defendant to explain his testimony in chief, and show what he understood to be his rights and obligations under the contract, and what action he proposed to take, was not objectionable, as not the best evidence.

In Error to the Circuit Court of the United States for the Southern District of New York.

See 132 Fed. 873.

This cause comes here on writ of error to review a judgment entered upon a verdict of a jury in the United States Circuit Court for the Southern District of New York, in favor of the defendant in error (plaintiff below), for the sum of $5,119.51, damages and costs.

L. L. Kellogg, for plaintiff in error.

Donald McLean, for defendant in error.

Before LACOMBE, TOWNSEND, and COXE, Circuit Judges.

TOWNSEND, Circuit Judge. Prior to June 23, 1900, the defendant entered into a contract with John B. McDonald for the building of a portion of the Rapid Transit Subway for the city of New York. On said day the plaintiff wrote the defendant the following letter:

"Mr. John Shields—Dear Sir: I will lay the water pipes on the Boulevard between 104th and 125th Sts. for the following prices: Laying 20″ pipe including excavation, backfill and all connections for the sum of $2.10 per linear foot. For laying 20″ pipe only with connections and not including excavation or backfill $1.25 per linear foot. * * * This does not include rock excavation or asphalt paving, if rock-excavation is to be made I shall do the same for $3.50 per cubic yard. All pipes and specials to be delivered alongside the trench.

"Yours truly,                              William F. Norton."

The defendant replied on July 18th, saying:

"Your proposal dated June 23d, for laying twenty-inch pipe including excavation, backfill, and making all connections and restoring street surface for the sum of two dollars and ten cents ($2.10) per lineal foot complete, is accepted."

After the plaintiff had done a portion of the work, he stopped on account of lack of pipe, and some time afterwards he found the defendant's workmen engaged in carrying on the balance of the work. Thereupon, the parties entered into a new contract for another portion of the work at $2 per linear foot, and plaintiff, because of defendant's failure to provide pipe, after having commenced the work, again stopped, and defendant again proceeded with the work, and refused to allow the plaintiff to resume operations. Thereupon the plaintiff sued the defendant, claiming as damages by reason of said refusal the profits lost, amounting to $3,998.47, being the difference between the contract price and what would have been the actual cost of the work if plaintiff had been permitted to perform the same. The jury rendered a verdict for the plaintiff for the full amount of his claim. The only questions before this court relate to the action of the court below in admitting certain evidence, and in leaving to the jury a question as to the construction of said contract.

To the admission of the testimony of one Smith, called to give an estimate as to the fair cost of performing the balance of the work which the plaintiff was not permitted to do, error is assigned, on the ground that said testimony was not predicated upon any basis of hypothetical or actual facts. That the witness was abundantly qualified as an expert is not questioned. He was familiar with the work done, he had seen it going on from time to time, he knew the general conditions existing in such trenches, and the dimensions of this particular trench, he had removed a portion of the excavated materials, and he knew the character of the excavation necessary for laying such a pipe.

On cross-examination he admitted that he did not know the quantities of earth or rock taken from the particular trench in question, or used in backfill, or the details of the work, or the actual conditions

existing in this particular trench. But upon his redirect examination his attention was called to said actual conditions, and he then stated that the prices given by him would apply to such a trench, and would represent the full average cost under such conditions. The testimony of the witness was therefore relevant as expert testimony, as to the average price of such work, based on conditions admitted to be correctly stated as to its average cost. The objections raised go only to the weight of the evidence, not to its admissibility. The familiarity of the witness with the actually existing conditions qualified him to take into consideration the elements of proportion of rock and earth and the general character of the work. That it was impracticable to furnish the best evidence of actual cost by exact proof of all the conditions of quantity, location, and classification is not the fault of the plaintiff. It is one of the risks which defendant assumed when he wrongfully broke the contract. As the difficulty of proving the actual damage resulted from the wrongful act of the defendant, he should not be permitted to reap an advantage therefrom by requiring that class of proof which by reason of his wrongful act the plaintiff has been unable to obtain. Lincoln v. Orthwein, 120 Fed. 880, 57 C. C. A. 540; Allen v. Field, 130 Fed. 654, 65 C. C. A. 32. In such a case "it is true that the cost of mining the remaining ore might differ from that of mining the ore which had already been taken out. But still, proof of the cost of taking out that which had been mined and of the condition of the mine as it was left, furnished a basis upon which a reasonable estimate could be made as to the cost of extracting the remaining ore." Anvil Min. Co. v. Humble, 153 U. S. 540, 14 Sup. Ct. 876, 38 L. Ed. 814.

The next exception relates to the action of the court in leaving to the jury the question whether, under the contract, the plaintiff was required to pay for shutting off the water in order to make the connections required by the contract. The contract, inter alia, provided that the plaintiff should lay the pipe, including excavation, backfill, and all connections. The defendant claimed that this included the expense of having the city authorities cut off the water. Plaintiff claimed that such expense was not included, that it was not customary to include it, that defendant had, in fact, paid it in this particular case. The court submitted this question to the jury as a mixed question of law and fact, and capable of either construction, and held that the ambiguity was to be interpreted by the jury, in view of the situation of the parties and the construction put upon the contract by their acts, and in view of all the surrounding circumstances. The court is of the opinion that under the express provisions of the contract the plaintiff was only required to make the connections after the pipes had been put in such a condition that the connections could be made. The action of the court, therefore, was not prejudicial to defendant.

The third point argued is based on the following assignment of error:

"Nineteenth. The court erred in permitting the witness John Shields on his cross-examination to answer the following question: 'Q. Did the Rapid Transit have a right under your contract to make you either tunnel or

take out pipes?' And to which question the following answer was given: 'A. Not the pipes, they had the right to make me tunnel or to make the open cut.' And also the following question: 'Q. Isn't it a fact that your contract for building the subway had no special reference to pipes at all, except in a general clause that you 'were required in constructing the subway to remove all sewers, water pipes, gas mains and support them or relocate them as was necessary to carry on the work that you had in carrying on the subway?' And to which question the following answer was given: 'A. Now, there seems to be a little misunderstanding about this pipe business on top of this subway. In the first place, from 125th street— I had a right to move the pipes or do anything that required me to do under the contract as I understood it.'"

It is argued that the reception of this testimony was reversible error because it "expressly called for the terms and conditions of a written instrument, which was itself the best evidence as to what the plaintiff in error (defendant) was required to do thereunder." The exception on which this assignment is founded and argued appears to be due to a misconception of the purpose for which this evidence was admitted. It was not admitted to show the terms of the written contract between the Rapid Transit Company and the defendant.

On his direct examination defendant had testified that he had such a contract, and had offered certain letters in evidence for the purpose of fixing its date. He had also testified to a conversation with plaintiff about the work which his contract did not cover, and his uncertainty as to what the rapid transit people would allow him to do beyond a certain point. Having thus opened the subject, he was cross-examined thereon, and in the course of said examination he was asked his understanding of the way in which he was obliged to carry on the work. Manifestly, the questions were asked merely for the purpose of requiring the defendant to explain his testimony in chief, and to show what he had understood to be his rights and obligations under said contract, and what action he had proposed to take.

The judgment is affirmed.