**UNITED STATES et al. v. BENEDICT.**

(Circuit Court of Appeals, Second Circuit. January 18, 1922.)

No. 94.

1. **Courts ⪻405(3)—Circuit Court of Appeals has jurisdiction to review judgment in action for compensation for property requisitioned.**

    The judgment of a District Court in an action against the United States, under Act Aug. 10, 1917, § 10 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 3115⅛ii), to recover additional compensation for property requisitioned by the government, *held* reviewable by the Circuit Court of Appeals, under Judicial Code, § 128 (Comp. St. § 1120).

2. **Evidence ⪻524—Expert testimony as to value of real estate held admissible.**

    On the question of the value of a considerable tract of land abutting on the waters of New York Harbor, in the absence of sales of other like property in the vicinity and near the time, testimony of experts *held* admissible.

3. **Appeal and error ⪻1008(2)—Findings of trial court have force of verdict.**

    Findings of a trial court, where a jury has been duly waived, have the force of a verdict.

4. **War ⪻14—Interest is recoverable on value of property requisitioned by the government; "just compensation."**

    In an action against the United States, under Act Aug. 10, 1917, § 10 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 3115⅛ii), to recover just compensation for property requisitioned by the government, "just compensation" is the fair value of the property when taken, with interest at the legal rate of the state from that time.

    [Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Just Compensation.]

---

⪻For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**5. Trusts ⬉191(3)—Power in will to sell held to authorize conveyance of streets to city.**

Trustees under the will of a testator, who left a large tract of land fronting on New York Harbor and valuable for harbor, given by the will broad powers to sell all or any part of the land, *held* to have authority to convey streets through the tract, extending to the shore, to the city in consideration of exemption of the remaining land from taxation, for extension of the streets, where such streets were necessary to the development and use of the remaining land, and would increase its value for maritime purposes, which was the evident intention of the testator.

**6. Municipal corporations ⬉224—"Block," as used in charter providing for conveyances to city by owners of block, defined.**

The word "block," as used in New York City Charter, § 992, providing that "the owners of land * * * within the lines of any street * * * and comprising all the land within said lines in an entire block in extent," may convey the same to the city on terms therein stated, *held* to include within its meaning the distance between an established street and the harbor front.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Block.]

**7. Eminent domain ⬉157—Distribution of compensation for land taken.**

Where the United States requisitioned a tract of shore land in Brooklyn, including strips across it which had been conveyed by the owner to the city for streets, but which had not been opened as streets, and compensation was awarded on a valuation per square foot of the entire tract, the city *held* entitled to the part of the award represented by the street area.

**8. Appeal and error ⬉1140(4)—Judgment erroneous in amount only may be corrected.**

Where a judgment is erroneous only as to amount, and is capable of correction by computation only, a remittitur or its equivalent may be directed by the appellate court.

In Error to the District Court of the United States for the Eastern District of New York.

Action at law by George F. Benedict, sole surviving trustee under the will of William C. Langley, deceased, against the United States and the City of New York. From the judgment, defendants bring error. Modified and affirmed, on filing of assignment by plaintiff of part of judgment to defendant City.

For opinion below, see 270 Fed. 267. See, also, 271 Fed. 714.

Writs of error to a judgment entered after trial with jury waived. Defendant in error (who will be hereafter referred to as the Langley Estate) owned in 1918 a considerable body of land, consisting both of upland and land under water, in the county of Kings and city of New York, and extending, according to the Langley contention, from First avenue, Brooklyn, to the pierhead line in the waters of New York Harbor. It was separated into two parts, one extending from the center line of Fifty-Eighth street to the corresponding line of Fifty-Ninth street, and the other from the southerly line of Sixty-Third street to a point 118 feet north of the center line of Sixty-First street. The area of the whole property was, as found by the court below, 1,714,322 square feet.

The property had been in the Langley family for many years, but defendant in error held title by virtue of the will of William C. Langley, deceased, which conferred a power upon this defendant in error and his predecessors in office in the following words: "I hereby authorize and empower my said executors and trustees and their successor and successors to sell at their discretion as to the time and terms, and at public or private sale, all and every part of

⬉For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

my real estate, and to execute and deliver all necessary and proper assurances and conveyances for the same to the respective purchasers thereof."

In assumed compliance with this power the trustees of the Langley Estate for the time being conveyed on April 25, 1899, to the city of New York as much land as was necessary to continue (through the Langley property) Sixty-First, Sixty-Second, and Sixty-Third streets to (as the deed stated) "the New York Bay." Such conveyance was executed, not only in pursuance of the testamentary power aforesaid, but of section 992 of the Charter of the city of New York (Laws 1901, c. 466), which provides in substance that "the owners of land * * * within the lines of any street * * * on the * * * plan of the city of New York, and comprising all the land within said lines in an entire block in extent, may" convey the same free of encumbrances to the city. If the city accepts such conveyance it "shall become vested with the title to said lands to the same effect and extent as if they had been acquired" in a condemnation proceeding for street purposes. After such conveyance "the lands fronting on that portion of the streets so conveyed, and extending to the center of the block on either side of such portion of said street as conveyed" shall not be chargeable (in effect) with any assessments consequent upon the "opening the residue or any portion of the residue of such street."

From 1899 to 1918 the streets in question remained unopened, in the sense that they were not used as highways. The entire property was not improved as a water front; some filling was done by which the area of land above water was somewhat increased, but whether by 1918 the process of filling had been extended to the bulkhead line as then authorized is a matter not specifically found by the lower court. On April 6, 1918, the United States acquired title to one of the above-stated parcels of Langley realty, and at a slightly later date to the other parcel; such acquisition being by virtue of what is known as the Lever Act of 1917 (40 Stat. 276 [Comp. St. 1918, Comp. St. Ann. Supp. 1919, §§ 3115⅛e–3115⅛kk, 3115⅛l–3115⅛r]), whereof the important section is the tenth (section 3115⅛ii), as follows:

"That the President is authorized, from time to time, to requisition foods, feeds, fuels, and other supplies necessary to the support of the army or the maintenance of the navy, or any other public use connected with the common defense, and to requisition, or otherwise provide, storage facilities for such supplies; and he shall ascertain and pay a just compensation therefor. If the compensation so determined be not satisfactory to the person entitled to receive the same, such person shall be paid seventy-five per centum of the amount so determined by the President, and shall be entitled to sue the United States to recover such further sum as, added to said seventy-five per centum, will make up such amount as will be just compensation for such necessaries or storage space, and jurisdiction is hereby conferred on the United States District Courts to hear and determine all such controversies."

Pursuant to that statute the Executive appointed a commission for the purpose of ascertaining and paying a "just compensation for what had been taken or requisitioned," which included all that the Langley Estate had conveyed to the city of New York in 1899. The governmental commission determined that just compensation was $1,796,522.20, with interest at 5 per cent. from May 1, 1918. This was in effect a determination that the property was worth $1.10 per square foot, and that the Langley Estate was entitled to be paid at that rate for all of the land except so much as lay within the limits of Sixty-First, Sixty-Second, and Sixty-Third streets "if projected between the westerly line of First avenue and the high-water line" as shown on the plan attached to the city's deed. The area of these street beds as above described was found to be 81,120 square feet.

This award was not satisfactory to the Langley Estate, in that (1) $1.10 per square foot was not enough; and (2) the city's title to the street beds was recognized in reduction of its acreage. Therefore this suit was brought, pursuant to the act of Congress above set forth.

The United States was originally the sole defendant, and on its motion the court below ordered that the city be "brought in as a party defendant" and that a supplementary summons issue accordingly. Such summons issued; an amended complaint was filed, in which it was alleged that the city, "by reason of the alleged deed" above referred to, claimed an "interest either substantial

or nominal in the streets hereinbefore referred to adverse to that of the plaintiff." The city appeared and answered, asserting title in itself in said streets and in an area of 81,120 square feet, and prayed for the dismissal of the complaint, and for "such other and further relief as to the court may seem just and proper."

The trial court (270 Fed. 267) determined (by formal findings of fact and conclusions of law) that the fair and reasonable value, and therefore just compensation, for what the United States had taken, was $3,428,644, or at the rate of $2 per square foot. It further found that the value was the same, "whether or not the city of New York held title to the lands within" the streets heretofore mentioned, but that the above referred to conveyance of April 25, 1899, was void, wherefore the title to the entire property taken was in Langley Estate, and to it should be awarded the entire recovery. To judgment accordingly both the United States and the city of New York took writs of error.

Wallace E. J. Collins, U. S. Atty., of Jamaica, N. Y., and Henry J. Walsh, Asst. U. S. Atty., of Brooklyn, N. Y. (Howard W. Ameli, Asst. Atty. Gen., of counsel), for the United States.

John F. O'Brien, Asst. Corp. Counsel, of New York City (Charles J. Nehrbas and Edward J. Kennedy, Jr., both of New York City, of counsel), for City of New York.

Seibert & Riggs, of New York City (William H. Seibert and Royal E. T. Riggs, both of New York City, of counsel), for Langley Estate.

Before HOUGH, MANTON, and MAYER, Circuit Judges.

HOUGH, Circuit Judge (after stating the facts as above). Defendant in error suggests rather than asserts that this court has no jurisdiction, because the statute intended, when it gave to the District Court power to "hear and determine," that the determination of that tribunal should be final. We do not so read United States v. Pfitsch, 256 U. S. 547, 41 Sup. Ct. 569, 65 L. Ed. 1084 (Sup. Ct., June 1, 1921). On the contrary, we think it was there plainly held that Congress intended, in section 10, to preserve the right to a jury and to create a cause of action governed by the "usual procedure of a District Court in actions at law for money compensation." That such usual procedure gives rise to a final decision, over which (under Judicial Code, § 128 [Comp. St. § 1120]) this court "shall exercise appellate jurisdiction" seems especially plain.

[2] The writ taken by the United States—under guise of objecting (1) to certain evidence; and (2) to the allowance of interest—really complains of the size of the award. It is not denied that, since the only contest between the Langley Estate and the nation was the value of what the latter had taken, the one thing incumbent upon the plaintiff to prove was the fair and reasonable market value of this land. Further, it is admitted that there were no actual sales of similar property within reasonable limitations of time and contiguity upon which to base decision. The only possible evidence was that of experts; i. e., persons who had studied the pecuniary possibilities of large lots of land abutting upon the waters of New York Harbor.

[3] As matter of law, expert testimony under even far less extreme circumstances than those just stated is admissible, as we held in Shields v. Norton, 143 Fed. 802, 74 C. C. A. 254. Under law too

well settled to require citation, the finding of the court below in an action at law, where a jury has been duly waived, has all the force of a verdict, and it is sufficient on this point to say that none of the opinion evidence offered by the experts on both sides was unlawfully received. There was beyond all question some evidence upon .which to base a finding of value in the sum of $2 per square foot.

[4] As to interest, it is to be noted that the acquisition of property under the Lever Act is only a summary species of what are commonly called condemnation proceedings. The justification for any condemnation is the necessity of taking something from a private person for a public use; and the justification for the summary procedure of the act under consideration is the overwhelming necessity for. speed under the dreadful pressure of war. But, whether the taking be by the familiar condemnation of peace or by the strong arm of a nation at war, the obligation upon the taker is always that recognized in this very statute, viz. to make "just compensation" to the owner. Monongahela, etc., Co. v. United States, 148 U. S. 312, 13 Sup. Ct. 622, 37 L. Ed. 463. And see a general consideration of the matter in National City Bank v. United States (D. C.) 275 Fed. 855.

It is certain that the national immunity from payment of interest does not extend to condemnation proceedings. United States v. Rogers, 257 Fed. 397, 168 C. C. A. 437; United States v. Highsmith, 257 Fed. 401, 168 C. C. A. 441, affirmed 255 U. S. 170, 41 Sup. Ct. 282, 65 L. Ed. 569, Feb. 28, 1921. Since, therefore, just compensation by definition includes interest (cf. Agency, etc., Co. v. American, etc., Co., 258 Fed. 363, 369, 169 C. C. A. 379, 6 A. L. R. 1182) and this statutory method of arriving at compensation is analogous to condemnation proceedings, we are of opinion that the statutory rate prevailing in New York was rightfully allowed. No error is discovered upon the writ of the United States.

The city's writ raises questions which may be stated as they are put by defendant in error: The Langley Estate deed to the city conveyed nothing, because (1) the trustees had no power to convey and (2) the city had no power to receive; and, if both these propositions be swept aside, then (3) the city's ownership is of such a nature as to make no difference in the award to plaintiff below.

[5] The alleged inability of the Langley trustees to convey is based upon the terms of their power to sell as embodied in the will which created them plus the Real Property Law of New York (Consol. Laws, c. 50, § 105, subd. 1), which provides that:

"If the trust is expressed in the instrument creating the estate, every sale, conveyance or other act of the trustee, in contravention of the trust * * * shall be * * * void."

But it will not do to stop with any narrow definition of the word "sell," which in its ordinary sense means a transfer of property for a fixed price in money or its equivalent. The Five Per Cent. Cases, 110 U. S. 471, at page 478, 4 Sup. Ct. 210, 28 L. Ed. 198. That immunity from ·assessments for street openings might be the equivalent of the definition is assuredly an arguable point with those acquainted

with the certain weight of that burden in the city of New York. But the broader view is to consider the history of this land as revealed by the record and the disposition thereof made by Langley the testator. It was plainly his intent to make as easy as possible the carrying of this land until the time came for its development. It was to that end that he gave to his trustees such extensive powers, and it must be assumed, in construing his will (including the quoted power), that it was the testator's desire that the authority he gave should be used in furtherance of his general purpose.

This property had come to be a most valuable water front; harbor development had caught up to it, defendant in error's argument rather broadly asserts that it was the last large frontage left unimproved and on the bay. To such a property streets are a necessity; access to the water front is a necessity of any development, in which respect property of this kind does not differ from other unimproved urban holdings.

It is pressed upon us that the state decisions, viz. Russell v. Russell, 36 N. Y. 581, 93 Am. Dec. 540, Scholle v. Scholle, 113 N. Y. 261, 21 N. E. 84, Turco v. Trimboli, 152 App. Div. 431, 137 N. Y. Supp. 343, and Wellbrock v. Roddy, 169 App. Div. 251, 154 N. Y. Supp. 830, compel the conclusion that nothing but a cash sale will satisfy the terms of the will. An examination of these authorities will show that in each instance decision was rested upon the facts of the case in hand, and no such absolute rule as is here contended for was laid down, while in Thomas v. Evans, 105 N. Y. 601, 12 N. E. 571, 59 Am. Rep. 519, is presented a litigation far more nearly resembling the present, and in that case the court stated the point here made, and proceeded to decide the cause on other grounds.

On the other hand, the Matter of Sixty-Seventh Street, 60 How. Prac. (N. Y.) 264, is, in the reasoning of Judge Daniels, perfectly applicable to this case. That learned justice, arguing from the obvious purpose and intent of a testator who left a large unimproved tract of urban property and gave to his personal representatives a power of sale substantially like the one at bar, found in that testator's executors a capacity so completely to divest themselves of title by merely selling lots as abutting upon unopened streets as to debar the estate they represented from receiving any compensation for the taking of their land when the streets were actually opened. If executors or trustees who never in terms exercised a power of sale in the premises could in effect merely surrender that which they had power only to sell (as this defendant in error would argue), it would seem plain that executors who wished to do exactly the same thing could arrive at the desired result for a valuable consideration.

The Sixty-Seventh Street Case was largely rested upon Earle v. Mayor, 38 N. J. Law, 47, and both the decisions last cited were specifically approved in Simmons v. Crisfield, 197 N. Y. 365, 90 N. E. 956, 26 L. R. A. (N. S.) 663. We therefore hold that the Langley trustees had authority to do what they did in 1899, and (as pointed out by Daniels, J.) it is not necessary to inquire whether the convey-

ance in question was merely in fulfillment of a power or the act of a trustee as such.

[6] The second proposition, viz. that the city had no power to take the property is based upon that portion of section 992 of the City Charter which requires such conveyances to be by the owners of land "an entire block in extent," and it is said that the distance from that street which was nearest the shore line to the shore was not a "block long." The exact number of feet from this street to the shore line is not specifically found, and we do not think any such finding material; for it is admitted that, however long or short was that distance, it measured the space between a street and navigable water.

The meaning given by lexicons of authority to the word "block" has often been judicially recognized, to wit, "the portion of a city inclosed by streets, whether occupied by buildings or not. Harrison v. People, 195 Ill. 466, 63 N. E. 191. But we must recognize obvious facts in a city like New York, delimited or marked off, not always by streets, but by water, and navigable water, which is as much a highway as any street; indeed, it has been held, and in respect of New York City, that "the general public has a right of passage over the places where land highways and navigable waters meet." Knickerbocker, etc., Co. v. 42d Street, etc., Co., 176 N. Y. 408, at page 417, 68 N. E. 864, at page 866. We therefore do not hesitate in holding that a block, within the meaning of the quoted section of the charter, covers the distance between an existing street and the navigable waters of New York Harbor.

[7] By the conveyance of 1899 the city became vested with title to a portion of the land taken by the United States, for which the defendant in error has been awarded compensation, and the extent of that land is proven and found to be 81,120 square feet, and it was worth $2 a square foot on April 6, 1918. Although it owned this land, it held it "in trust for the public use." Knickerbocker, etc., Co. v. 42d Street, etc., Co., supra.

It is now argued that, with a title of this kind and on evidence proving that "whether or not the city held title to" the 81,120 square feet the value of the entire property was just the same, and the award to the Langley Estate should not be disturbed in amount. But, if the record be examined to ascertain why the expert witnesses substantially agreed that the value of the land was unchanged by the conveyance for street purposes, it is found that they all said in effect that the street value (i. e., land value of the streets) was "reflected" in the value of the land as bounded or limited by the proposed streets.

This means that, if and when the streets were opened, the abutting property would, by reason of the streets, be worth at least as much more as was the value of the land appropriated for highway purposes. But no streets have been opened in the physical sense, and the city owns the surface to be devoted to streets. That it is held in trust for a public purpose does not in any way change its market value, and the city has been as much deprived of what it owned as was the Langley Estate. To put it another way, the Langley Estate has been award-

ed all that the land is worth, streets and all, because, when streets are opened, the land they have left will be worth the amount of the award. This will not do. The government is called upon to make just compensation for things as they are, not as they may be hereafter, and the compensation must flow to those who were actually deprived of what they own.

[8] Since the valuation of this property on the testimony adopted by the court below is a mere matter of computation, and since the street land was taken on April 6, 1918, it follows that the record before us shows that the city has been deprived of and is entitled to compensation for 81,120 square feet of land, worth $2 per foot, or $162,240, with interest thereon at 6 per cent. from April 6, 1918.

The judgment is therefore excessive so far as the Langley Estate is concerned, but under such circumstances, where the error is capable of correction by computation only, a reversal is not necessary; a remittitur or its equivalent may be directed by the appellate court. Van Boskerck v. Torbert, 184 Fed. 419, 107 C. C. A. 383, Ann. Cas. 1916E, 171. Usually the remittitur ordered merely reduces the recovery against the defendants generally, but in this instance the remittitur should be in effect an assignment to the defendant the city of New York of its just proportion of the judgment, to wit, $162,240, with interest thereon from April 6, 1918. Upon the filing of such assignment within 30 days from the rendition of this decision, the judgment will be affirmed; otherwise, judgment reversed, and a new trial awarded.

The issuance of any mandate will be delayed for the above period of 30 days.